UNITED STATES of America,
Plaintiff–Appellee,

v.

Leonard D. SINGLETON,
Defendant–Appellant.

No. 89–3484.

United States Court of Appeals,
Sixth Circuit.

Argued April 3, 1990.

Decided May 3, 1990.

Nancy Vecchiarelli (argued), Office of the U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Mark R. DeVan (argued), Cleveland, Ohio, for defendant-appellant.

Before MARTIN and JONES, Circuit Judges, and DeMASCIO, Senior District Judge.*

BOYCE F. MARTIN, JR., Circuit Judge.

Leonard Donald Singleton appeals a conviction by a jury for possession of a firearm by a three-time felon. 18 U.S.C. §§ 922(e), 922(g)(1). Singleton claims principally that the instructions to the jury failed to recognize his theory of justification. Singleton also claims that the government failed to prove that the firearm had passed through interstate commerce. We affirm the judgment of the district court.

---

* The Honorable Robert E. DeMascio, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

At the time of the events in question, Singleton was serving out the remainder of his sentence for a previous conviction at a halfway house. It is undisputed that Singleton has been convicted of three felonies and that he was in possession of a firearm. However, Singleton and the government proffered very different explanations at trial of how Singleton came into possession of the firearm. The government contended that Singleton used the firearm to burglarize the house of Billie Ray King–El. Singleton testified that King–El kidnapped him and that he took the firearm while escaping. Singleton contended that he first encountered King–El at a service station while test-driving a Cadillac. King–El demanded money owed him by Singleton, but Singleton left the service station. Singleton testified that he returned to the Cadillac dealership and left a message for his salesman. While returning to the car, Singleton testified that King–El abducted him to force the payment of the money. Singleton admitted that he obtained possession of a gun, but stated that he gained it while escaping from King–El after King–El had threatened to kill him.

After fleeing King–El's house—whether because of the escape or a bungled burglary—Singleton went to the house of a friend's girlfriend, Ruby Marks. He parked the car and went inside, leaving the gun in the car. Singleton failed to return to the halfway house by the 6:00 p.m. curfew. The police found Singleton at Marks's house.

■ The Sixth Circuit has not yet ruled on whether a felon can ever be justified in possession of a firearm. We hold that a defense of justification may arise in rare situations. *See United States v. Gant*, 691 F.2d 1159 (5th Cir.1982); *United States v. Agard*, 605 F.2d 665 (2d Cir.1979). Although the language of 18 U.S.C. § 922 gives no hint of an affirmative defense of justification, Congress enacts criminal statutes "against a background of Anglo–Saxon common law." *United States v. Bailey*, 444 U.S. 394, 415 n. 11, 100 S.Ct. 624, 637 n. 11, 62 L.Ed.2d 575 (1980). In *Bailey*, the Supreme Court held that prosecution for escape from a federal prison, despite the statute's absolute language and lack of a *mens rea* requirement, remained subject to the common law justification defenses of duress and necessity. *Id.* Similarly, the Congressional prohibition of possession of a firearm by a felon does not eliminate the possibility of a defendant being able to justify the possession through duress or necessity. *Gant*, 691 F.2d at 1161. For example, common sense dictates that if a previously convicted felon is attacked by someone with a gun, the felon should not be found guilty for taking the gun away from the attacker in order to save his life.

■ The justification defense for possession of a firearm by a felon should be construed very narrowly. In *Gant*, the Fifth Circuit held that in order to show a justification defense, a defendant must show:

(1) that defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury" *United States v. Bailey*, 585 F.2d 1087, 1110 (D.C.Cir.1978) (Wilkey, J., dissenting), *rev'd*, 444 U.S. 394 [100 S.Ct. 624, 62 L.Ed.2d 575] (1980);

(2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct]," *United States v. Agard*, 605 F.2d 665, 667 (2d Cir.1979);

(3) that defendant had no "reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm'," *United States v. Bailey*, 444 U.S. 394, 410 [100 S.Ct. 624, 635, 62 L.Ed.2d 575] (1980); and

(4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm." *United States v. Cassidy*, 616 F.2d 101, 102 (2d Cir.1979).

*Gant*, 691 F.2d at 1162–63 (brackets original) (citations omitted). In *Gant*, the defendant had used a pistol to drive out two

men that the defendant believed were about to rob the store. 691 F.2d at 1163. The Court held that Gant had failed to show that there was a direct causal relationship between using the gun and avoiding the attempted robbery and that he had no alternative to using the gun, such as calling the police. *Id.*

We adopt the four factor test in *Gant.* We emphasize that the keystone of the analysis is that the defendant must have no alternative—either before or during the event—to avoid violating the law. *Bailey,* 444 U.S. at 410, 100 S.Ct. at 634; *United States v. Lewis,* 628 F.2d 1276, 1279 (10th Cir.1980), *cert. denied,* 450 U.S. 924, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981).

■ Even though we recognize the affirmative defense of justification, the district court did not err in refusing to instruct the jury on this defense if the evidence could not support a verdict based on it. *See Bailey,* 444 U.S. at 398–99, 100 S.Ct. at 628–29 (holding that escapee from prison was not entitled to an instruction to the jury on justification because evidence on which to base a verdict was not introduced). The government argues that even Singleton's version of events leaves only the conclusion that he acted recklessly or negligently under *Gant,* by returning to the Cadillac dealership after his encounter with King–El at the service station, instead of going straight to the halfway house. However, Singleton testified that he had already avoided a confrontation once at the service station and that he did not realize he would run into King–El again at the Cadillac dealership. This testimony does not lead to an inescapable conclusion that Singleton negligently or recklessly placed himself in a position where he would likely take possession of a firearm.

Nevertheless, a jury instruction on the defense of justification was unwarranted because Singleton failed to show that he did not maintain possession any longer than absolutely necessary. *United States v. Stover,* 822 F.2d 48 (8th Cir.1987) (no justification defense if the defendant maintains possession of the firearm after the danger subsides). Corollary to the requirement that the defendant have no alterna-

tive to possession of the firearm is the requirement that the defendant get rid of the firearm as soon as a safe opportunity arises. *Cf. Bailey,* 444 U.S. at 399, 100 S.Ct. at 629 (prison escapee asserting justification defense must show that he attempted to surrender as soon as safety allowed). If we assume that the jury believed Singleton's testimony about being kidnapped, there still is no dispute that he maintained possession of the firearm after he had made his escape. Such possession could not have been justified. Singleton should have called the police or at least returned to the halfway house. Thus, Singleton was not entitled to an instruction to the jury on the justification defense.

■ Singleton's second argument—that the government failed to prove an adequate interstate nexus for the firearm—is without merit. Singleton relies on *dicta* in *United States v. Craven,* 478 F.2d 1329 (6th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973) to argue that the interstate transportation of the firearm must be recent. This *dicta* has long since been eclipsed by the Supreme Court decision of *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). In *Scarborough,* the Supreme Court held that only a minimal nexus was needed to establish that the firearm affected interstate commerce. *Accord, United States v. Jones,* 533 F.2d 1387, 1392 (6th Cir.1976), *cert. denied,* 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977). Indeed, the mere fact that the firearm was manufactured in a different state established a sufficient nexus with interstate commerce. *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976). Here, the government introduced evidence that the firearm was manufactured in Florida and travelled to Pennsylvania. The government bore its burden under 18 U.S.C. § 922 to show that the firearm affected interstate commerce.

For the above stated reasons, the judgment of the district court is affirmed.