**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5366

MICHAEL MCMANUS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CR-94-445-A)

Argued: May 10, 1996

Decided: May 31, 1996

Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Drewry Bacon Hutcheson, Jr., Alexandria, Virginia, for
Appellant. Steve Semeraro, OFFICE OF THE UNITED STATES
ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:**
Helen F. Fahey, United States Attorney, Francis C. Kiley, Special
Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael McManus, an inmate at the Maximum Security Facility at Lorton Reformatory, appeals his conviction for possession of a shank in violation of 18 U.S.C. § 13, assimilating Virginia Code § 53.1-203(4). McManus contends that the district court erred in: (1) wrongfully admitting a photocopy of the shank into evidence, (2) failing to instruct the jury as to his affirmative defenses, and (3) failing to instruct the jury as to the intent element of the crime. Finding no reversible error, we affirm.

I.

The facts of this case are highly disputed.

The government introduced evidence at trial that on August 23, 1993, Corporal Lonny Bish, a corrections officer at the Lorton Reformatory, observed McManus half-way down a cell-block tier talking to another inmate, Leon Hunter. Following a brief altercation between McManus and Hunter, Bish saw Hunter running down the tier with McManus chasing him. Bish ordered them both to stop but neither obeyed his orders. As Hunter ran, he flung plastic chairs and an ice cooler behind him to impede McManus. McManus chased Hunter to the recreation room and around the weight machine. Bish then called for assistance and again ordered the two inmates to stop. When they ignored his orders, Bish attempted to restrain McManus by grabbing him from behind. As McManus struggled to free himself, he stabbed Bish in the arm with a shank until Bish released him. McManus then told Bish that he would "do" Bish if Bish did not leave him alone. At that point, another corrections officer, Officer Jones, entered the recreation room and restrained Hunter. McManus, who was by then free, ran down the tier and Bish chased after him. When they reached the end of the tier, Bish told McManus to relinquish the shank. "If you

2

want it," McManus answered, "come and get it." Other officers soon arrived on the tier to find McManus brandishing the shank. After several minutes, McManus finally dropped the shank.

McManus' version of the facts is quite different. He testified that Hunter, a fellow inmate, had picked a fight with him on the basketball court earlier that day. McManus walked away from the fight, believing the confrontation with Hunter to be over. However, later that day when McManus was on his way to take a shower, Hunter approached his cell threatening to kill him. When McManus saw something that he believed looked like a nail in Hunter's hand, McManus "rushed" him. At that point, the shank fell to the floor and McManus retrieved it. Hunter then ran down the tier and McManus followed in the same direction. McManus claims that he was not pursuing Hunter, but rather that he was bringing the shank to a corrections officer. On his way to turn in the shank, McManus explains, Hunter hit him in the head with an ice cooler and he was "pretty much dazed" by the impact. Hunter then proceeded to attack McManus, who swung the shank in defense and stabbed him. During the struggle, Officer Bish came between them and McManus accidentally stabbed the officer in the arm. McManus, who was still frightened from the encounter with Hunter, ran down the tier. He admits that Bish chased after him and asked him to relinquish the shank. McManus asserts that he was reluctant to give Bish the shank until he was sure that Hunter had been restrained. McManus claims that he did not see any other officers enter the recreation room before he left and was not sure whether Hunter had been secured. When other officers appeared on the tier and reassured McManus that Hunter was secured, McManus no longer felt threatened and placed the shank on the ground.

McManus was tried for one count of assault and a second count of unlawful possession of a dangerous weapon. The judge instructed the jury as to the elements of each charge. Subsequently, the jury asked the court to repeat its instructions regarding the assault charge. In particular, the jury was concerned about "the instruction regarding intent versus accident." The court responded that in order to convict McManus on the assault charge, the jury had to find that he knowingly, willfully, and intentionally committed the act. McManus never requested instructions regarding any affirmative defense or the intent requirement for the possession charge. The jury convicted McManus

3

on the possession charge but was deadlocked as to the assault charge. McManus now appeals his conviction for possession.

## II.

McManus first contends that the trial court erred in admitting into evidence a photocopy of the shank, asserting it was not properly authenticated and did not satisfy the "best evidence" and "chain of custody" rules. We review a district court's determination as to admissibility of evidence under an abuse of discretion standard. See United States v. Howard-Arias, 679 F.2d 363, 366 (4th Cir.), cert. denied, 495 U.S. 874 (1982).

McManus' argument that the photocopy of the shank did not satisfy the "best evidence" rule is wholly misplaced, because the rule applies only to documents, recordings, and photographs. Federal Rule of Evidence 1002, better known as the "best evidence" rule, states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording or photograph is required, except as otherwise provided." Even if the best evidence rule was applicable here (and it is not), it would not have been violated. The rule permits the admission of a copy if the original object has been lost or destroyed, unless the proponent of the evidence lost or destroyed the original in bad faith. Fed.R.Evid. 1004(1). See also United States v. Ross, 33 F.3d 1507, 1513 (11th Cir. 1994), cert. denied , ___ U.S. ___, 115 S. Ct. 2558 (1995). In the case at hand, the original shank was inadvertently destroyed by the government; there was no evidence that it was destroyed in bad faith.

McManus also contends that the admission of the photocopy was inconsistent with the "chain of custody" rule. This argument is also meritless. The "chain of custody" rule is a variation of the requirement under Fed.R.Evid. 901(a) that evidence must be properly authenticated or identified prior to being admitted. United States v. Turpin, 65 F.3d 1207, 1213 (4th Cir. 1995) (citing Howard-Arias, 679 F.2d at 366), cert. denied, ___ U.S. ___, 116 S. Ct. 1324 (1996). The "chain of custody" rule therefore requires that admitted exhibits "be preceded by `evidence sufficient to support a finding that the matter in question is what its proponent claims.'" United States v. Ricco, 52

4

F.3d 58, 61 (4th Cir.) (quoting Fed. R. Evid. 901), cert. denied, ___ U.S. ___, 116 S.Ct. 254 (1995).

This requirement has clearly been satisfied in the instant case. The government offered sufficient evidence to show that the photocopy of the shank accurately represented the shank used by McManus. Corporal Bish, the officer who was stabbed by McManus, described the shank used in the attack and identified the photocopy as a depiction of that weapon. Captain Washington testified that the photocopy looked like the one used by McManus "in all respects." A third officer, Captain Steward, testified that he tagged the shank in his own handwriting and photocopied it after retrieving it from the area of the attack. Steward also testified that photocopying the shank was part of the standard procedure following an assault, permitting a copy of the weapon to be placed in the inmate's disciplinary file. Finally, Stewart identified the photocopy as the one that he had made and the tag seen in the photocopy as the one that he placed on the shank. Because such testimony is more than sufficient to authenticate the evidence, the district court did not abuse its discretion in admitting the photocopy.

III.

McManus argues that the district court erred in failing to instruct the jury regarding affirmative defenses for unlawful possession of a shank. Because McManus failed to request these instructions, we review the district court's instructions for plain error. United States v. Olano, 507 U.S. 725 (1993); United States v. Morgan, 942 F.2d 243, 247 (4th Cir. 1991), cert. denied, 506 U.S. 1040 (1992), and cert. denied, 506 U.S. 1061 (1993).

The government argues that McManus was not entitled to the instructions regarding the defenses of justification, coercion, or duress because he did not present sufficient evidence to support these defenses so as to warrant the instructions. We agree.

In United States v. Crittendon, 883 F.2d 326 (4th Cir. 1989), we held that in order to be entitled to the defense of justification for the unlawful possession of a weapon, a defendant must produce evidence that would allow the factfinder to conclude that he:

5

(1) was under unlawful and present threat of death or serious bodily injury; (2) did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) [that there existed] a direct causal relationship between the criminal action and the avoidance of the threatened harm.

Id. at 330 (citation omitted). In Crittendon, we found that the defendant was not entitled to the instruction on justification because he had not met the first element. Id. The defendant's explanation that he was carrying a gun because he had been shot several months earlier, "[did] not support a conclusion that he was under a present or imminent threat of death or injury." Id. See also United States v. Perrin, 45 F.3d 869 (4th Cir. 1995) (defendant not entitled to instruction where his explanation for carrying weapon was that a man with a shotgun had been looking for him at his cousin's house two days earlier), cert. denied, ___ U.S. ___, 115 S. Ct. 2287 (1995).

Other courts have similarly rejected a defendant's arguments of entitlement to a justification instruction when any of the four Crittendon factors have not been met. See United States v. Blankenship, 67 F.3d 673, 678 (8th Cir. 1995) (instruction not warranted where defendant "recklessly placed himself in the situation" and "had reasonable alternatives" to possession); United States v. Singleton, 902 F.2d 471 (6th Cir.) (defendant who claimed he had been kidnapped was not entitled to instruction when he failed to relinquish weapon well after escaping from kidnapping), cert. denied, 498 U.S. 872 (1990); United States v. Harper, 802 F.2d 115 (5th Cir. 1986) (defendant who purchased gun after robberies of his store not entitled to instruction because he was not in imminent danger). Cf. United States v. Paolello, 951 F.2d 537 (3d Cir. 1991) (defendant entitled to instruction where imminent danger was evidenced by the fact that he wrestled a gun away from an attacker following a heated argument); United States v. Panter, 688 F.2d 268 (5th Cir. 1982) (instruction warranted where the illegal firearm possession occurred while defendant was in imminent danger where "in the actual physical course of a conflict," defendant had already been stabbed in the abdomen).

6

McManus' claim that he was entitled to instructions on justification must also be rejected. Even under McManus' version of the facts, McManus "rushed" Hunter to pre-empt an attack after he saw something in Hunter's hand. When the shank fell from Hunter's hand to the floor, Hunter ran away. At that point, McManus, who had retrieved the shank, followed Hunter. Although McManus claims that he was not planning to harm Hunter, it is clear that at that point, McManus could have dropped the shank and sought out the authorities. In fact, McManus could have run away from the altercation, rather than "rushing" Hunter to obtain the shank. These facts defeat McManus' claim that his possession of the shank was justified. Even if McManus' initial possession of the shank would have warranted a justification instruction, his continued possession rendered such an instruction unwarranted.

The facts in the instant case resemble those in <u>Singleton</u>, 902 F.2d 471, and <u>Blankenship</u>, 67 F.3d 673. In <u>Singleton</u> the court found that the defendant was not entitled to a justification instruction even though he claimed that he obtained a gun while escaping from a kidnapping. The court emphasized that "the keystone of the analysis is that the defendant must have no alternative -- either before or during the event -- to avoid violating the law." <u>Singleton</u>, 902 F.2d at 473 (citing <u>United States v. Bailey</u>, 444 U.S. 394, 410 (1980)). Because the defendant continued his possession of the weapon even after he had successfully escaped from the alleged kidnapping, he was not entitled to the instruction on justification. Similarly, in <u>Blankenship</u>, the court found that the defendant was not entitled to the instruction simply because an assailant approached his trailer threatening to harm him. When the confrontation escalated between defendants and the assailant, the defendant went to a nearby trailer, obtained a shotgun, and returned to the confrontation. The court held that the defendant had reasonable alternatives because he could have gone for help or sent his wife to contact the police. <u>Blankenship</u> , 67 F.3d at 678. McManus, like the defendants in <u>Singleton</u> and <u>Blankenship</u>, chose to retain possession of the shank, despite other lawful alternatives even after escaping from the alleged incident with Hunter. Consequently, he was not entitled to the justification instruction.

For the same reason, McManus was not entitled to jury instructions regarding coercion and duress. Both of these defenses require that the

7

defendant show that he violated the law only to the extent necessary to avoid death or serious bodily injury. Thus, a defense of coercion is not available to "[o]ne who has full opportunity to avoid the act without danger of [death or serious bodily injury]." Blankenship, 67 F.3d at 677-78 (citation omitted); United States v. Simpson, 979 F.2d 1282 (8th Cir. 1992) (citation omitted), cert. denied, 507 U.S. 943 (1993). Similarly, a defense of duress requires a showing that a genuine effort to stop the illegal action was made as soon as the claimed force of duress had ceased. United States v. Sarno, 24 F.3d 618, 621 (4th Cir. 1994). Because McManus had the opportunity to surrender the shank well before he did, he has failed to establish coercion or duress.

IV.

Finally, McManus asserts that he was entitled to a jury instruction that conviction of possession of a shank requires a finding of criminal intent. Again, his failure to request this instruction subjects the district court's decision to review only for plain error. Any error committed by the district court in failing to give the desired instruction was certainly not plain.

There can be no doubt, even if we accept the facts as McManus describes them, that his possession of the shank was knowing and willful. McManus' own testimony proves that he knew what the shank was when he took hold of it. During trial he explained: "As I rushed him and he tried to grab me, that's when the shank fell. So, I retrieved the shank. And then he ran." Indeed, McManus' entire defense -- that he took hold of the shank to protect himself during a confrontation with an inmate -- assumes willful possession. See Connecticut v. Johnson, 460 U.S. 73, 87 (1983) (Blackmun, J., writing for a plurality) ("In presenting a defense such as alibi, insanity, or self-defense, a defendant may in some cases admit that the act alleged by the prosecution was intentional, thereby sufficiently reducing the likelihood that the jury applied the erroneous instruction as to permit the appellate court to consider the error harmless."). Having conceded the element of intent in arguing his defense, McManus cannot now complain that the jury was not clearly instructed to find intent.

Furthermore, although the jury did not receive specific instructions from the court regarding intent on the possession charge, it did receive a copy of the indictment, which charged McManus with "unlawfully, knowingly, and willfully" possessing a shank. Moreover, the court explained to the jury -- albeit in the context of providing instructions regarding the assault charge -- that an act had to be knowing and willful in order to be intentional. Consequently, the jury could infer that if the possession also had to be knowing and willful, it too had to be intentional. Accordingly, the district court's failure to instruct the jury regarding intent on the possession charge was not plain error.

V.

For the foregoing reasons, McManus' conviction is hereby

AFFIRMED.