**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0565n.06
Filed: August 9, 2007

**No. 05-4300**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| V. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| WINSTON GRAINGER, | ) | |
| | ) | |
| Defendant-Appelant.. | ) | |

---

Before:     **MOORE and GILMAN, Circuit Judges; FORESTER, Senior District Judge.**[*]

**KARL S. FORESTER, Senior District Judge.**   The Defendant-Appellant, Winston Grainger, appeals his conviction for illegally reentering the United States after having been previously deported, in violation of 8 U.S.C. §§ 1326(a), (b)(2).  Prior to beginning the trial of this matter, the district court considered the United States' motion *in limine* to preclude Grainger from asserting a necessity defense.  After a proffer of testimony by Grainger, the district court granted the United States' motion and precluded Grainger from asserting the necessity defense on the grounds that he failed to make an application for reentry with the Attorney General and that, at the time he reentered

---

[*]        The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

the United States, he was not under any imminent threat. Following this adverse ruling, Grainger was convicted by a jury. For the reasons set forth below, the judgment of the district court will be AFFIRMED.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

On December 2, 2003, a federal grand jury in Columbus, Ohio, returned a one count indictment against Grainger, charging him with being unlawfully in the United States after having been deported following his conviction for aggravated felony, in violation of 8 U.S.C. §§ 1326(a), 1326(b)(2). Prior to the trial, the United States filed a motion *in limine* to preclude Grainger from presenting a necessity defense. In support of this motion, the United States argued that Grainger's reasons for reentering the United States were insufficient as a matter of law to support the proffered defense.

The district court held a preliminary hearing on the United States' motion on the day of the trial, but before the jury was selected. Grainger was allowed to take the stand to make a proffer of evidence in support of the necessity defense. Grainger testifed as follows. A native of Grenada, Grainger legally emigrated to the United States in 1986. He subsequently married an American citizen and the couple had one child. Thereafter, Grainger was convicted of possession of an illegal substance and deported to Grenada in 1999. Grainger's family followed him to Grenada and a second child was subsequently born. However, Grainger contends that he and his family felt threatened in Grenada, that he was accused of renouncing his real country of Grenada, and that he was fearful of serious injury. Grainger's wife also expressed her desire to be closer to her family in the United States.

As a result, in October 2001, the couple decided to move to Canada. Grainger made a trip

alone to Canada to obtain information about moving there, but was advised to come back with his entire family. Shortly thereafter, Grainger returned to Canada with his family. After about one month, Grainger's wife took their children to the United States and Grainger remained in Canada. In late 2001, Grainger illegally entered the United States and began living with his family in Columbus, Ohio. Because he was not able to work due to his illegal status, he stayed at home with his children while his wife worked. During this time, a third child was born to the couple. Although Grainger and his wife discussed getting him "reinstated," he did not apply to the Attorney General of the United States for permission to reenter the United States either before or after his entry.

Grainger gave several reasons for the need to reenter the United States. Initially, he claimed that he felt threatened by unnamed individuals in Grenada, forcing him to leave Grenada for the United States. He also testified that he was "coerced into coming back into the United States for maybe financial gains by my family and my wife involved in the conspiracy to achieve money from my father." Finally, he testified that he reentered the United States because of his children.

Grainger acknowledged that he and his family were allowed to live in Canada, and that they were not forced to leave that country. When presented with his deportation papers, which advised him that he could not reenter the United States for a period of ten years, Grainger admitted that he signed the papers, but maintained that no one explained the paperwork to him.

The district court considered Grainger's proffer of evidence, and ruled that the evidence fell short of establishing the defense of necessity. Thus, the district court granted the United States' motion and precluded Grainger from testifying as to the matters referred to in his proffer. The case was tried to a jury, and Grainger was found guilty of the crime charged in the indictment. He was ultimately sentenced to sixty months incarceration, three years of supervised release, and deportation

3

upon the conclusion of his incarceration.

Grainger appeals the district court's ruling precluding him from presenting a necessity defense. The Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3742, 28 U.S.C. § 1291, and Rule 4(b) of the Federal Rules of Appellate Procedure.

## II.     STANDARD OF REVIEW

Whether or not a defendant has established a prima facie case of the affirmative defense of necessity is a question of law which this Court reviews *de novo. United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005), *cert. denied*, ___ U.S. ___, 126 S.Ct. 1378 (2006).

## III.    ANALYSIS

"[T]he defense of necessity**,** or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." *United States v. Bailey*, 444 U.S. 394, 410 (1980). Necessity differs from duress, because "[t]he theory of necessity is that the defendant's free will was properly exercised to achieve the greater good and not that his free will was overcome by an outside force as with duress." *United States v. Contento-Pachon*, 723 F.2d 691, 695 (9th Cir. 1984). Both the necessity defense and the duress defense have evolved in common law and been encompassed by the broader justification defense. *United States v. Newcomb*, 6 F.3d 1129, 1133 (6th Cir. 1993).

Although illegal reentry into the United States is a statutory crime, the Supreme Court has held that "Congress in enacting criminal statutes legislates against a background of Anglo-Saxon common law." *Bailey*, 444 U.S. at 415, n. 11. As a result, common law justification defenses like necessity and duress may be employed as a defense to a statutory crime such as illegal reentry into the United States. However, these justification defenses are appropriate only in "rare situations[,]"

4

. . . should be construed very narrowly," and a district court will not err "in refusing to instruct the jury on this defense if the evidence could not support a verdict based on it." *United States v. Singleton*, 902 F.2d 471, 472-73 (6th Cir. 1990).

In *Singleton*, this Court held that a jury instruction on the defense of necessity is proper only if the defendant has produced evidence upon which a reasonable jury could conclude by a preponderance of the evidence that each of the following five circumstances exist:

> (1) that the defendant was under an unlawful and present imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
> (2) that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
> (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; and
> (5) that the defendant did not maintain the illegal conduct any longer than absolutely necessary.

*Singleton*, 902 F.2d at 472-73; *see also Newcomb*, 6 F.3d at 1134-35; *United States v. Hargrove*, 416 F.3d 486, 490 (6th Cir. 2005). The *Singleton* court emphasized that "the keystone of the analysis is that the defendant must have no alternative - either before or during the event - to avoid violating the law." *Singleton*, 902 F.2d at 473.

An analysis of these factors in this case clearly reveals that a jury instruction on the defense of necessity was unwarranted. The United States concedes that Grainger satisfied the first two elements of the necessity analysis with his testimony that he and his family felt threatened in Grenada, that he feared his wife might suffer serious injury, and that the threats in Grenada were based solely on the fact that his wife was an American citizen. It is the three final elements of the analysis which control this case.

5

Grainger failed to present any evidence that he had no reasonable alternative to violating the law. In fact, Grainger and his family left Grenada, where they felt threatened, and moved to Canada where they lived peaceably and apparently legally for approximately one month. Grainger illegally reentered the United States only to follow his wife and their children, who had already moved to Ohio. Certainly, Grainger could have remained in Canada – a reasonable, legal alternative to illegally reentering the United States. Although noting the obvious human motivations in deciding to reenter the United States, the district court correctly determined that they do not rise to the level of necessity.

Moreover, the evidence showed that Grainger had another reasonable, legal alternative to violating the law. As explained in his deportation papers, Grainger could have reapplied to the Attorney General for permission to reenter the United States pursuant to 8 U.S.C. § 1326(a)(2)(A). Although the outcome of any application for reentry is indeed uncertain, Grainger cannot show that this was not a reasonable, legal alternative to violating the law. Additionally, the fact that Grainger claims he was unaware of the opportunity to apply to Attorney General for permission to reenter is irrelevant. The defendant's subjective belief as to available legal alternatives is not determinative. "As long as [the d]efendant's crises permitted 'a selection from among several solutions, some of which did not involve criminal acts,' . . . the necessity defense must fail." *United States v. Meraz-Valeta*, 26 F.3d 992, 995 (10th Cir. 1994)) (the defendant's "subjective belief as to available legal alternatives is not determinative"), *overruled on other grounds by United States v. Aguirre-Tello*, 353 F.3d 1199, 1208 (10th Cir. 2004). *See also United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998). Thus, Grainger cannot satisfy the third and key element of the necessity analysis.

Nor can Grainger satisfy the fourth element - whether a direct causal relationship may be

reasonably anticipated between the criminal action and the avoidance of harm. At the time Grainger illegally reentered the United States in late 2001, he had been living peaceably in Canada and free of the threats which caused him to flee Grenada. His motivation to come to the United States was not based on any imminent fear for his health or safety, but rather based solely on family considerations. Thus, Grainger failed to establish any direct causal relationship between his illegal reentry into the United States and the avoidance of imminent harm.

Finally, with respect to the fifth element of the analysis, Grainger remained illegally in the United States from late 2001 until his arrest in the fall of 2003. Even assuming that Grainger was justified in illegally entering the United States based on an imminent harm with no reasonable or legal alternative, during the approximately two years he lived illegally in this country he made no effort to apply to the Attorney General for reentry, to return to Canada, or to take any other steps to discontinue his illegal conduct.

Grainger's failure to proffer any competent evidence (1) that he had "no reasonable, legal alternative" to illegally reentering the United States, (2) that there was a causal relationship between the criminal action and the avoidance of threatened harm, and (3) that he did not maintain the illegal conduct any longer than absolutely necessary, was fatal to his showing a prima facie case and precluded his presentation of the necessity defense.

## IV.    CONCLUSION

For the reasons set forth above, the decision of the district court is AFFIRMED.

7

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** I concur in the judgment. I would rest our decision on the ground that Grainger failed to show that he had no reasonable, legal alternative to violating the law. Grainger's stay in Canada precludes him from establishing any direct causal relationship between his illegal reentry into the United States and the avoidance of imminent harm. For that reason, I would affirm the district court's judgment.