NO. COA13-954

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

STATE OF NORTH CAROLINA

    v.                                    Gaston County
                                          No. 12 CRS 5522-23
ANTONIO ALONZO MONROE


    On writ of certiorari from judgment entered 11 April 2013 by Judge Yvonne Mims Evans in Superior Court, Gaston County. Heard in the Court of Appeals 25 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General LaShawn S. Piquant, for the State.*
>
> *Mark Hayes for Defendant.*

    McGEE, Judge.


    Antonio Alonzo Monroe ("Defendant") was indicted for first-degree murder of Mario Davis ("Davis"), possession of a firearm by a felon, and for attaining the status of an habitual felon. A jury found Defendant not guilty of first-degree murder but guilty of possession of a firearm by a felon and of attaining the status of an habitual felon on 10 April 2013. Defendant appeals from judgments entered upon his convictions.

The night before the offenses at issue, Defendant and Davis had an argument at the residence of Defendant's uncle. Antwan Cobb ("Cobb"), a witness to the events, testified that "as we unlock the door to leave out, [Davis and another man] barge in[.]" An argument resulted, the police arrived, and the argument ended. The following day, 17 June 2011, Defendant and Davis had another brief argument outside the residence of Jah'Kwesi Gordon ("Gordon"). Davis told Defendant he was going to "turn the heat up on" him, and Davis then left with O'Brian Smith ("Smith").

Shortly thereafter, Davis returned to the front yard of Gordon's residence, along with Smith. There was conflicting evidence as to whether Davis had a gun when he returned. Cobb testified that Davis said he was "going to stay out here until the door come open." Gordon retrieved a gun from his bedroom in the back of the house. While Defendant and Gordon were inside the house, Defendant took the gun from Gordon.

Gordon went outside the house to ask Davis to leave. Defendant remained in the house with the gun. Gordon testified that he was outside talking to Davis for less than five or ten minutes before Defendant came to the doorway. Gordon further testified that, when Defendant came to the doorway, "[h]e had a couple more words and then [Davis] hit" Defendant "towards the

facial area." Defendant then shot Davis five times. Defendant and Cobb left in Cobb's car.

At trial, during the charge conference, Defendant asked the trial court to instruct the jury on self-defense as to the charge of possession of a firearm by a felon. Defendant submitted the requested instruction in writing in a document titled "Request for Special Jury Instruction on Duress or Justification." The trial court denied Defendant's request for the special instruction.

Defendant argues on appeal that the trial court erred by failing to instruct the jury on self-defense as to the charge of possession of a firearm by a felon. This Court addressed this argument in *State v. Craig*, 167 N.C. App. 793, 606 S.E.2d 387 (2005), in which we noted that "[f]ederal courts have recently recognized justification as an affirmative defense to possession of firearms by a felon." *Id.* at 795, 606 S.E.2d at 389 (citing *U.S. v. Deleveaux*, 205 F.3d 1292 (11th Cir. 2000)).

## I. The *Deleveaux* Test

"[T]he *Deleveaux* court limited the application of the justification defense to 18 U.S.C. § 922(g)(1) cases (federal statute for possession of a firearm by a felon) in 'only extraordinary circumstances.'" *Craig*, 167 N.C. App. at 796, 606 S.E.2d at 389 (quoting *State v. Napier*, 149 N.C. App. 462, 465,

560 S.E.2d 867, 869 (2002)). In *Deleveaux*, the United States Court of Appeals for the Eleventh Circuit cited three cases from other circuits, *U.S. v. Paolello*, 951 F.2d 537 (3rd Cir. 1991), *U.S. v. Singleton*, 902 F.2d 471 (6th Cir. 1990); *cert denied*, 498 U.S. 872, 112 L. Ed. 2d 158 (1990), and *U.S. v. Perez*, 86 F.3d 735 (7th Cir. 1996), to illustrate that the defense is available only in extraordinary circumstances. *Deleveaux*, 205 F.3d at 1297.

In *Paolello*, the United States Court of Appeals for the Third Circuit observed that the "restrictive approach is sound" and required that "the defendant meet a high level of proof to establish the defense of justification." *Paolello*, 951 F.2d at 542. In *Singleton*, the United States Court of Appeals for the Sixth Circuit held that "a defense of justification may arise in rare situations" in prosecutions for possession of a firearm by a felon. *Singleton*, 902 F.2d at 472. The Court observed that, although the language of 18 U.S.C. § 922 "gives no hint of an affirmative defense of justification, Congress enacts criminal statutes 'against a background of Anglo-Saxon common law.'" *Id.* (quoting *U.S. v. Bailey*, 444 U.S. 394, 415, 62 L. Ed. 2d 575, 594 n.11 (1980)).

"In *Bailey*, the Supreme Court held that prosecution for escape from a federal prison, despite the statute's absolute

language and lack of a *mens rea* requirement, remained subject to the common law justification defenses of duress and necessity." *Singleton*, 902 F.2d at 472. "Similarly, the Congressional prohibition of possession of a firearm by a felon does not eliminate the possibility of a defendant being able to justify the possession through duress or necessity." *Id.*

"Common law historically distinguished between the defenses of duress and necessity." *Bailey*, 444 U.S. at 409, 62 L. Ed. 2d at 590. "Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law." *Id.* "While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." *Id.* at 409-10, 62 L. Ed. 2d at 590. "Modern cases have tended to blur the distinction between duress and necessity." *Id.* at 410, 62 L. Ed. 2d at 590.

"[I]f a previously convicted felon is attacked by someone with a gun, the felon should not be found guilty for taking the gun away from the attacker in order to save his life."

*Singleton*, 902 F.2d at 472. The Court held that the "justification defense for possession of a firearm by a felon should be construed very narrowly" and emphasized "that the keystone of the analysis is that the defendant must have no alternative—either before or during the event—to avoid violating the law." *Id.* at 472-73.

In *Perez*, the United States Court of Appeals for the Seventh Circuit observed that the "defense of necessity will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened (the other might be the possessor of the gun, threatening suicide)." *Perez*, 86 F.3d at 737. The Court held that "the defendant may not resort to criminal activity to protect himself or another if he has a legal means of averting the harm." *Id.*

Under *Deleveaux*, "a defendant must show four elements to establish justification as a defense" to the charge of possession of a firearm by a felon:

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury;
>
> (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct;
>
> (3) that the defendant had no reasonable

> legal alternative to violating the law; and
>
> (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Craig*, 167 N.C. App. at 796, 606 S.E.2d at 389 (quoting *Deleveaux*, 205 F.3d at 1297); *see also U.S. v. Crittendon*, 883 F.2d 326, 330 (4th Cir. 1989).

## II. Standard for Reviewing the Evidence

Defendant argues that, when deciding whether to give a requested instruction, the trial court must consider the evidence in the light most favorable to the movant. As support, Defendant cites *Long v. Harris*, 137 N.C. App. 461, 467, 528 S.E.2d 633, 637 (2000), wherein the appeal arose from the denial of a requested instruction on a "sudden emergency" in a civil negligence action. The present appeal, by contrast, arises from the denial of a requested instruction on self-defense in a criminal prosecution. We examine *Napier*, *Craig*, and other cases that have considered this issue for guidance.

In *Napier*, this Court stated only that the trial court must give the requested instruction, "at least in substance, if [it is] proper and supported by the evidence." *Napier*, 149 N.C. App. at 463, 560 S.E.2d at 868. This Court did not state that the trial court must consider the evidence in the light most favorable to the movant. In *Craig*, this Court considered only

the uncontroverted evidence. *Craig*, 167 N.C. App. at 796, 606 S.E.2d at 389.

In *State v. Boston*, 165 N.C. App. 214, 222, 598 S.E.2d 163, 167 (2004), this Court made no statement as to how the evidence must be viewed. In our analysis, we considered what the evidence tended to show and referred to what the State's evidence tended to show. *Id.* Also, in *State v. McNeil*, 196 N.C. App. 394, 406, 674 S.E.2d 813, 821 (2009), this Court considered only that the evidence showed that the defendant "possessed the shotgun inside his home . . . at which time there was no imminent threat of death or serious bodily injury."

Thus, the only guidance from this Court is that the instruction must be "supported by the evidence." *Napier*, 149 N.C. App. at 463, 560 S.E.2d at 868. This Court has never stated that, in prosecutions for possession of a firearm by a felon, the evidence must be viewed in the light most favorable to a defendant.

However, in an appeal from a conviction for driving while impaired, this Court stated that "there must be substantial evidence of each element of the defense when 'the evidence [is] viewed in the light most favorable to the defendant'" to entitle the defendant to a necessity instruction. *State v. Hudgins*, 167 N.C. App. 705, 709, 606 S.E.2d 443, 446 (2005) (quoting *State v.*

*Ferguson*, 140 N.C. App. 699, 706, 538 S.E.2d 217, 222 (2000) (regarding an instruction on manslaughter)). Thus, we review the evidence in the present case in the light most favorable to Defendant, in order to determine whether there is substantial evidence of each element of the defense.

Though the case is not binding, we note that in *Perez*, the United States Court of Appeals for the Seventh Circuit stated that a "criminal defendant is entitled to an instruction on any defense for which there is some support in the evidence[.]" *Perez*, 86 F.3d at 736. The Court further stated that the United States "Supreme Court has made clear that the evidence must be sufficient to allow a reasonable jury to find the defense proved." *Id.* (citing *Mathews v. U.S.*, 485 U.S. 58, 99 L. Ed. 2d 54 (1988)).

### III. North Carolina Cases Applying *Deleveaux* By Assuming *Arguendo* That It Applies In North Carolina

In *Napier*, this Court noted that "the courts of this State have not recognized justification as a defense to a charge of possession of a firearm by a felon." *Napier*, 149 N.C. App. at 464, 560 S.E.2d at 869. Nevertheless, the defendant in that case asked "this Court to expand the necessity defense and adopt the test for justification" set forth in *Deleveaux*. *Id.* (internal quotation marks omitted). This Court assumed, without deciding, that the *Deleveaux* rationale applied, but concluded

that the evidence in *Napier* did "not support a conclusion that [the] defendant was under a present or imminent threat of death or injury." *Id.* at 465, 560 S.E.2d at 869.

The evidence in *Napier* was that the defendant, a convicted felon who was involved in an on-going dispute with his neighbor and his neighbor's son, "voluntarily walked across the street" to his neighbor's property, while armed with a handgun. *Id.* The defendant stayed there for several hours and eventually shot the neighbor's son in the arm. *Id.* This Court disregarded evidence of the neighbor's son's drug and alcohol use, his threats to the defendant, and recent shootings into the air by him over the defendant's property in deciding whether the defendant was entitled to an instruction on justification. *Id.*

In *Craig*, the defendant continued to hold the firearm after leaving the altercation, while "not under any imminent threat of harm." *Craig*, 167 N.C. App. at 796-97, 606 S.E.2d at 389. This Court concluded that "the evidence did not support giving a special instruction on justification because there was a time period where [the] [d]efendant was under no imminent threat while possessing the gun." *Id.* at 797, 606 S.E.2d at 389.

In *Boston*, the evidence tended to show that the defendant and the victim "were engaged in an on-going conflict whereby in the week prior to the shooting, [the victim] threatened to kill

[the] defendant, and on at least one prior occasion [the victim] fired a gun at [the] defendant." *Boston*, 165 N.C. App. at 222, 598 S.E.2d at 167. This Court held that the trial court did not err in failing to instruct the jury on justification because the defendant "was observed walking through the apartment complex carrying a pistol." *Id.* There was "no evidence to support the conclusion that [the] defendant was under an imminent threat of death or injury when he made the decision to carry the gun." *Id.* at 222, 598 S.E.2d at 167-68.

In *McNeil*, this Court held that the evidence did not support giving a special instruction on justification where the evidence showed that the defendant "possessed the shotgun inside his home and away from" the victim, "at which time there was no imminent threat of death or serious bodily injury." *McNeil*, 196 N.C. App. at 406-07, 674 S.E.2d at 821.

Although unpublished, the analysis in *State v. Ponder*, ___ N.C. App. ___, 725 S.E.2d 674 (2012) (unpublished) (COA 11-1365) is instructive. This Court held that the defendant was "not under an imminent threat when he acquired the gun" in *Ponder*. *Id.*, slip op. at 4. The defendant "chose to leave the residence and stand in the field, waiting to confront [the victim]. [The] [d]efendant could have telephoned the police before obtaining the weapon." *Id.*, slip op. at 5.

## IV. Application To The Present Case

Consistent with the precedent from this Court, we assume *arguendo*, without deciding, that the *Deleveaux* rationale applies in North Carolina prosecutions for possession of a firearm by a felon. Nevertheless, the evidence in the present case, even when viewed in the light most favorable to Defendant, does not support a conclusion that Defendant, upon possessing the firearm, was under unlawful and present, imminent, and impending threat of death or serious bodily injury.

The evidence showed there had been an on-going dispute between Defendant and Davis. Defendant was at Gordon's house on 17 June 2011. Davis and Smith later arrived at Gordon's house, and Defendant and Davis subsequently argued outside Gordon's house. The argument did not last long. Cobb, who witnessed the events on 17 June 2011, testified that Davis told Defendant he was going to "turn the heat up on" him. Cobb testified that the phrase meant: "I guess I'm going to shoot you, anything." Cobb further testified that after Davis said that, Davis and Smith left and were gone for fifteen or twenty minutes.

Davis and Smith returned to Gordon's house. Inside the house, Gordon retrieved a gun from his bedroom in the back of the house. While inside the house, Defendant took the gun from Gordon. Gordon went outside to ask Davis to leave. Defendant

followed Gordon to the door and stood in the doorway of the residence. Gordon testified that he was outside talking to Davis for less than five or ten minutes before Defendant came to the doorway. Gordon further testified that, when Defendant came to the doorway, "[h]e had a couple more words and then [Davis] hit" Defendant "towards the facial area." Defendant then shot Davis five times.

The uncontroverted evidence at trial showed that Defendant was inside Gordon's house when Defendant took possession of a firearm. Defendant's primary support for his argument that the trial court erred in failing to give a special instruction is that the jury found Defendant not guilty of first-degree murder "under a theory of perfect self-defense." However, the record does not indicate why the jury acquitted Defendant of first-degree murder——whether on the basis of self-defense or that the jury found that the State failed to carry its burden to prove beyond a reasonable doubt that Defendant murdered Davis. The record is silent as to this issue. Any speculation by this Court as to the reason or reasons for the jury's decision to acquit Defendant of first-degree murder is therefore baseless.

Furthermore, the offenses of murder and possession of a firearm by a felon are separate and distinct criminal offenses. They share no elements in common. *See* N.C. Gen. Stat. §§ 14-

415.1; 14-17 (2013); *State v. Vance*, 328 N.C. 613, 621-22, 403 S.E.2d 495, 501 (1991). Murder is a crime, defined as at common law. *See Vance*, 328 N.C. at 622, 403 S.E.2d at 501 ("as N.C.G.S. § 14-17 does not define the crime of murder, the definition of that crime remains the same as it was at common law"). By contrast, possession of a firearm by a felon is a statutory criminal offense of relatively recent vintage. The offenses are related in the present case only by the fact that the State sought to prove that Defendant used a firearm to shoot Davis.

Defendant's subsequent contentions are that Davis "had instigated violence against [Defendant] before," and that remaining inside Gordon's residence would have been "no protection" because Davis had previously "barged in" to a residence where Defendant was located. However, the evidence does not compel a conclusion that, while inside the residence, Defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury. As previously discussed, this Court has disregarded evidence of the victim's drug and alcohol use, threats, and recent shooting over the defendant's property in *Napier*, 149 N.C. App. at 465, 560 S.E.2d at 869.

We thus cannot rely on the mere possibilities that (1) Davis may have been about to enter the residence and (2) that Davis then would have threatened death or serious bodily injury to Defendant. Defendant has failed to show that he was under "'unlawful and present, imminent, and impending threat of death or serious bodily injury'" at the time he took possession of the firearm. *Craig*, 167 N.C. App. at 796, 606 S.E.2d at 389 (quoting *Deleveaux*, 205 F.3d at 1297).

Although the failure to make this showing is alone sufficient to hold that the trial court did not err in denying Defendant's request for the instruction, we note that Defendant also failed to show that he "had no reasonable legal alternative to violating the law[.]" *Id.* It was uncontroverted that Defendant voluntarily armed himself and then walked to the doorway of the residence. Defendant has not shown there was no acceptable legal alternative other than arming himself with a firearm, in violation of N.C.G.S. § 14-415.1, and walking to the doorway of Gordon's house.

Even viewing the evidence in the light most favorable to Defendant, we conclude that Defendant has not made the requisite showing of each element of the justification defense. Thus, even assuming *arguendo*, without deciding, that the rationale in *Deleveaux* applies in North Carolina prosecutions, the trial

court did not err in refusing Defendant's request to give a special instruction on self-defense as to the charge of possession of a firearm by a felon.

No error.

Judge STEELMAN concurs.

Judge STROUD dissents with separate opinion.

STATE OF NORTH CAROLINA

    v.                          Gaston County
                                   No. 12 CRS 5522-23

ANTONIO ALONZO MONROE

On writ of certiorari from Judgment entered 11 April 2013 by Judge Yvonne Mims Evans in Superior Court, Gaston County. Heard in the Court of Appeals 25 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General LaShawn S. Piquant, for the State.*
>
> *Mark Hayes for Defendant.*

STROUD, Judge, dissenting.

Because I believe that the evidence would permit a jury to find that defendant was justified in possessing the firearm under the *Deleveaux* test, I dissent, and I would reverse defendant's conviction for possession of a firearm by a felon and remand for a new trial on these charges.

The majority opinion summarizes the evidence presented at trial quite well, but draws a different conclusion from it than I would; a properly instructed jury may also. First, I would hold that the *Deleveaux* test does apply in North Carolina. Our

cases have relied upon it several times, although only assuming *arguendo* that it would apply because the facts in those cases did not satisfy the test. The test is entirely consistent with North Carolina's common law defenses of justification and necessity and provides useful guidance to the trial courts for instructing juries. In the cases discussed by the majority opinion, different factual situations were presented and, in those cases, the jury instruction was not supported by the evidence under the *Deleveaux* test. The factual situation here is different and presents a question of fact that I believe a jury should have the opportunity to resolve.

In *Napier*, the defendant possessed a gun when he went to the victim's property, where he stayed several hours and only then shot the victim. *State v. Napier*, 149 N.C. App. 462, 463, 560 S.E.2d 867, 868 (2002). Thus, the defendant possessed the gun well before he was potentially under any sort of threat which would justify possession of the gun. In addition, the jury's assessment of the facts in *Napier* was quite different than in this case. The *Napier* defendant was charged with

> (1) discharging a firearm into occupied property, (2) assault with a deadly weapon with intent to kill inflicting serious injury, (3) conspiracy to discharge a firearm into occupied property, (4) conspiracy to commit an assault with a

> deadly weapon, (5) possession of a firearm by a felon on 4 July 1999, and (6) possession of a firearm by a felon on 3 July 1999.

*Id.*

The jury deadlocked and a mistrial was declared on the first two charges. *Id.* The jury found defendant not guilty of conspiracy and possession on 4 July and found defendant guilty only of the charge of possession on 3 July. *Id.* This Court noted that the evidence did not support defendant's claim of justification due to the lapse of time between when defendant went to the victim's property while carrying a gun and the shooting: "[D]efendant asked Robert Ford and Brad Ford if they wanted him to take the gun home; and defendant, while armed, stayed on Robert Ford's premises for several hours talking to Robert Ford before the fight ensued." *Id.* at 465, 560 S.E.2d at 869. Under these circumstances, defendant was not entitled to an instruction on justification. *Id.*

In *Craig*, the defendant was charged with assault with a deadly weapon inflicting serious injury and possession of a firearm by a felon. *State v. Craig*, 167 N.C. App. 793, 795, 606 S.E.2d 387, 388 (2005). An instruction as to self-defense was given, but the trial court did not give the requested

instruction as to justification for possession of the gun.[1] *Id.* at 794, 606 S.E.2d at 388. The jury found defendant guilty of both charges. *Id.* at 795, 606 S.E.2d at 388. On appeal, failure to give an instruction as to justification for possession of the firearm was the only issue raised by defendant. *Id.* The Court noted that the

> uncontroverted evidence in this case shows that after leaving the altercation, Defendant kept the gun and took it with him to a friend's house on Dana Road. He continued to hold it and carry it while speaking with Hamilton. At that time, Defendant was not under any imminent threat of harm. Thus, the evidence did not support giving a special instruction on justification because there was a time period where Defendant was under no imminent threat while possessing the gun.

*Id.* at 796-97, 606 S.E.2d at 389 (citation omitted).

In *Boston*, the defendant was charged with and convicted of second-degree trespassing and possession of a firearm by a felon. *State v. Boston*, 165 N.C. App. 214, 215, 598 S.E.2d 163, 164 (2004). The evidence showed that the

> defendant and Daniels were engaged in an on-going conflict whereby in the week prior to the shooting, Daniels threatened to kill defendant, and on at least one prior occasion Daniels fired a gun at defendant. However, the evidence also tends to show

---

[1] Although not clear from the opinion, the record from *Craig* shows that a self-defense instruction was given.

> that on the day of the shooting, defendant was observed walking through the apartment complex carrying a pistol. The State's evidence also tended to show that defendant chased Daniels around a parked car with the gun in hand. Therefore, we hold that, as in *Napier*, there is no evidence to support the conclusion that defendant was under an imminent threat of death or injury when he made the decision to carry the gun. Accordingly, the trial court did not err in failing to instruct the jury on justification as an affirmative defense.

*Id.* at 222, 598 S.E.2d at 167-68. Again, regardless of whether defendant may have been justified in possessing the gun at the moment of the shooting, the evidence showed that defendant possessed the gun at a time entirely separate from the altercation—when he was "walking through the apartment complex carrying a pistol." *Id.* at 222, 598 S.E.2d at 167.

In *McNeil*, the defendant was charged with and found guilty of "first degree murder and possession of a firearm by a felon." *State v. McNeil*, 196 N.C. App. 394, 396, 674 S.E.2d 813, 815 (2009). As in this case, defendant did request and the trial court gave an instruction on self-defense. *Id.* at 400, 674 S.E.2d at 817. Unlike the present case, the jury found defendant guilty on all charges and rejected defendant's claims of self-defense. *Id.* The evidence as to the defendant's possession of the firearm in *McNeil* was as follows:

On 15 March 2007, William Frederick Barnes ("Barnes") rode his bicycle up to the passenger side window of Vashawn Tomlin's ("Tomlin") car at approximately 10:00 a.m. Tomlin testified that Barnes wanted to wash Tomlin's car. Approximately five minutes later, Tomlin saw Defendant walk out of Defendant's house by Tomlin's car and then walk into another house. Defendant walked out of the second house and spoke to Tomlin and Barnes. Barnes asked Defendant, "What's up[?]" to which Defendant replied, "You got a nerve speaking to me, I ain't forgot what you did, I was going with her then." Barnes asked Tomlin what Defendant was talking about. Defendant tried to argue with Barnes, and " kept saying . . . 'I'll burn your ass[.]' " Defendant also told Barnes he would "put a hot one in him."

Tomlin testified that Defendant walked back into the first house and returned carrying a shotgun. Defendant walked from his porch toward Barnes, who was still sitting on a bicycle and leaning against the door of Tomlin's car, and Defendant shot Barnes with the shotgun. Tomlin testified Defendant walked back toward his house, then turned and walked into the street, stood over Barnes, aimed the shotgun at Barnes and fired. After shooting Barnes the second time, Defendant walked back to his house and stood in the doorway "looking crazy."

*Id.* at 396-97, 674 S.E.2d at 815-16.

As to the defendant's request for an instruction on justification, the *McNeil* court stated that

As in *Craig* and *Napier*, the evidence in the present case shows that Defendant possessed the shotgun inside his home and away from Barnes, at which time there was no imminent

> threat of death or serious bodily injury. Without deciding the availability of the justification defense in possession of a firearm by a felon cases in North Carolina, we hold that the evidence in this case did not support giving a special instruction on justification.

*Id.* at 406-07, 674 S.E.2d at 821 (citation omitted).

Overall, these cases support, rather than defeat, defendant's argument that the jury should have been instructed on justification. The most significant difference between this case and all of those above is that in those cases, there was an obvious time period when the defendant possessed a gun but was not under any imminent threat of death or great bodily harm. Even if the those defendants may have been justified in possessing a gun at the exact moment of the altercation—which the juries all found they were not, by rejecting the self-defense theory—they would still be guilty of possessing the gun at a time completely separate from the altercation with the victim.

Here, by contrast, the evidence, taken in the light most favorable to defendant, showed that the entire time that defendant possessed the gun Mr. Davis was standing outside of the house with a gun, posing an imminent threat. One witness testified that Mr. Davis said he was "going to stay out here

until the door come open." Therefore, there was evidence from which a jury could reasonably conclude that defendant's possession of the firearm was justified for the entire time he possessed it.

Moreover, unlike in the prior cases, the jury acquitted the defendant of all homicide charges based upon self-defense. Defendant was charged with first degree murder, but the jury was presented with issues as to first degree murder, second degree murder, and voluntary manslaughter and found defendant not guilty of all of these. I disagree with the majority's statement that "the record does not indicate why the jury acquitted Defendant of first-degree murder—whether on the basis of self-defense or that the jury found that the State failed to carry its burden to prove beyond a reasonable doubt that Defendant murdered Davis."

To the contrary, it is not disputed that defendant shot Davis, and the jury acquitted defendant of first degree murder as well as all lesser-included offenses. The only logical inference we can draw from the jury's verdict is that the jury relied upon defendant's claim of perfect self-defense. In none of the cases discussed above did the jury believe the defendants' claims of self-defense, where that issue was

presented.  It is true that the facts presented might have permitted a jury to reject a claim of self-defense, and that a jury might have found that defendant could have used some other means to protect himself or to avoid a confrontation with Davis, but the jury has already considered that evidence and found in favor of defendant.  This means that the jury found that:

> (1)  it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
>
> (2)  defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
>
> (3)  defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
>
> (4)  defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Lyons*, 340 N.C. 646, 661, 459 S.E.2d 770, 778 (1995) (citation and quotation marks omitted).

Given the jury's determination as to self-defense as to the shooting here, it is entirely possible, and indeed probable,

that the jury would have also found, if properly instructed, that the four elements of the justification defense were established:

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*United States v. Deleveaux*, 205 F.3d 1292, 1297, *cert. denied*, 530 U.S. 1264, 147 L.Ed. 2d 988 (2000).

The elements of perfect self-defense and justification are slightly different, but not much, particularly under the facts as presented in this case. The gun defendant used was not his own; he got it from Gordon just prior to the shooting—not hours or days before, but minutes—while Davis was just outside the house, threatening defendant. The issue of the timing of defendant's possession of the gun is crucial. It is possible that a jury could find that he possessed it longer than necessary for his own protection, but the facts certainly present a jury question in that regard, and that is sufficient

for defendant to be entitled to the instruction.[2]

This case presents one of those "most extraordinary circumstances" where the justification defense is applicable. It is odd that a man could be acquitted for all forms of homicide based on the theory that he had a clear right of self-defense, but he would be convicted for using the gun that the jury found to be necessary under the circumstances to protect himself from "death or great bodily harm." *Lyons*, 340 N.C. at 661, 459 S.E.2d at 778. This is not one of those cases where the jury already evaluated any claims of self-defense and rejected them, as all of the prior cases from this court cited by the majority were. Indeed, it is difficult to imagine a situation in which a defendant would be entitled to an instruction on justification for possession of a firearm if defendant here was not. I would therefore specifically adopt the justification defense as laid out in *Deleveaux*, reverse defendant's convictions for possession of a firearm by a felon and habitual felon, and remand for a new trial on these matters. Therefore, I respectfully dissent.

---

[2] *See State v. Bush*, 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982) ("A defendant is entitled to an instruction on self-defense if there is any evidence in the record from which it can be determined that it was necessary or reasonably appeared to be necessary for him to kill his adversary in order to protect himself from death or great bodily harm.").