STATE OF NORTH CAROLINA v. SHAHEEDAH DARINA RUSHDAN

No. COA06-1229

(Filed 15 May 2007)

**Judges— no expression of opinion or bolstering of witness testimony—failure to show prejudice—totality of circumstances**

A totality of circumstances test revealed that the trial court did not commit prejudicial error in a multiple obtaining property by false pretense, multiple attempting to obtain property by false pretense, and breaking and entering a vehicle case by asking defendant questions and clarifying witnesses's testimony, because: (1) the trial court did not express an opinion or bolster witness testimony, nor did it prejudice defendant by clarifying witness testimony; and (2) defendant failed to show any of the court's comments throughout the trial prejudiced her in light of the overwhelming evidence of defendant's guilt.

Appeal by defendant from judgments entered 27 January 2006 by Judge Michael E. Helms in Guilford County Superior Court. Heard in the Court of Appeals 24 April 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Dennis Myers, for the State.*

*Kevin P. Bradley, for defendant-appellant.*

TYSON, Judge.

Shaheedah Darina Rushdan ("defendant") appeals from judgment entered after a jury found her to be guilty of four counts of obtaining property by false pretense, five counts of attempting to

STATE v. RUSHDAN

[183 N.C. App. 281 (2007)]

obtain property by false pretense, and one count of breaking and entering a vehicle. We find no prejudicial error.

## I. Background

### A. State's Evidence

On 16 August 2004, defendant drove a red van containing her daughter and a friend, Adrienne Williams, ("Williams") to a finance company parking lot. Defendant parked in an adjoining parking space occupied by Vanessa Sykes's ("Sykes") car and said, "I ought to take [that] pocketbook for . . . pulling in this close to me." Williams helped defendant's daughter out of the car. Defendant told Williams to "[p]ut [her daughter] back in the car [and to] . . . . [g]et back in the car." Defendant "put the car in reverse and . . . skidded out of the parking lot."

Sykes walked out of the finance company and noticed a red van leaving the lot "real fast." Sykes had left her purse on her car's front seat and discovered it was missing. Sykes's purse contained her checkbook, credit cards, and her North Carolina driver's license. Sykes reported the theft to law enforcement. Defendant stopped the van a few minutes later and went through Sykes's pocketbook.

A few days later, Williams watched as defendant taped a color picture of herself over Sykes's driver's license's photograph. Defendant told Williams she wanted to use the license and the checks. Defendant later told Williams the license had "worked" and she had used it as identification to purchase merchandise from Target. Defendant asked Williams to accompany her to the mall, but Williams refused.

Defendant went to the mall with two of her children and Williams's daughter. Defendant returned with several bags of merchandise, including a Belk's bag. Defendant left the Belk's bag with merchandise therein at Williams's home.

On 22 August 2004, defendant attempted to negotiate a check using Sykes's altered license at the Finish Line and Foot Locker at Oak Hollow Mall. On 29 August 2004, defendant attempted, but failed, to negotiate a check using Sykes's altered license as identification at Food Lion. Defendant exited the store and left a check and her wallet inside. The wallet contained Sykes's altered license and defendant's identification. It also contained carbon copies of checks written on 22 August 2004, payable to Belk's, Dillard's, Motherhood Maternity, and Gold & Diamond, and checks dated 25 August 2004 and 29 August

2004, payable to Food Lion, after Sykes's purse was stolen. Food Lion videotaped the 29 August 2004 attempted transaction and defendant was identified as the person who left the wallet inside Food Lion.

On 9 September 2004, defendant was arrested. Defendant provided and signed a statement that she had found Sykes's pocketbook on the ground, not inside her car. She admitted altering Sykes's license and using it and the stolen checks to obtain merchandise from various stores. Williams was also arrested after defendant told law enforcement officers that Williams was involved in the crimes. Williams told police officers about a taped conversation between Williams and defendant. During that conversation, defendant told Williams, "there's no chance that they can convict you of it, because it was my ID, it's my name on the checks, it's my signature. I'm the one who did it."

### B. Defendant's Evidence

Defendant's evidence consisted solely of her testimony. She testified she found the pocketbook on the ground and did not remove it from Sykes's car. She denied altering Sykes's license and denied writing any checks. Defendant stated Williams had altered Sykes's license, had written checks, and that she did not know how her wallet was left at Food Lion. She admitted she had written the checks and signed the statement with the police, but claimed she had written down what the police had suggested in hopes of receiving favorable treatment.

On 23 January 2006, a jury found defendant to be guilty of four counts of obtaining property by false pretense, five counts of attempting to obtain property by false pretense, and one count of breaking and entering a vehicle. Defendant pled guilty to attaining the status of an habitual felon. Defendant was sentenced in the presumptive range as a Prior Record Level II offender to two consecutive terms of 100 months minimum active imprisonment and 129 months maximum active imprisonment. Defendant appeals.

### II. Issue

Defendant argues the trial court erred when the trial judge clarified witnesses' testimony and evidence presented at trial.

### III. Standard of Review

"The judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be

decided by the jury." N.C. Gen. Stat. § 15A-1222 (2005). "In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." *State v. Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995).

### IV. Trial Court's Statements

N.C. Gen. Stat. § 15A-1222 has been interpreted to prohibit a trial judge from expressing any opinion regarding the weight or credibility of any competent evidence presented before the jury. *State v. Harris*, 308 N.C. 159, 167, 301 S.E.2d 91, 97 (1983). All facts and attendant circumstances must be considered and the judge's remarks must be considered in context. *State v. Brady*, 299 N.C. 547, 560, 264 S.E.2d 66, 74 (1980).

"[I]t is well settled that it is the duty of the trial judge to supervise and control the course of a trial so as to insure justice to all parties." *State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985). A trial judge "may question a witness for the purpose of clarifying his testimony and promoting a better understanding of it." *State v. Whittington*, 318 N.C. 114, 125, 347 S.E.2d 403, 409 (1986). "In so doing the court may question a witness in order to clarify confusing or contradictory testimony." *Id.* The trial court maintains a duty to control the examination of witnesses, both for the purpose of conserving the trial court's time and to protect the witness from prolonged, needless, or abusive examination. *State v. White*, 340 N.C. 264, 299, 457 S.E.2d 841, 861, *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995). A new trial is not required if, considering the totality of the circumstances under which a remark was made, defendant fails to show prejudice. *State v. King*, 311 N.C. 603, 618, 320 S.E.2d 1, 11 (1984).

### A. Williams's Testimony

Defendant argues the trial court mischaracterized Williams's testimony. Williams testified she could not recall the exact time when she recorded a telephone conversation with defendant. In the jury's presence, the trial judge clarified that Williams was unsure when she recorded the telephone conversation. The trial judge stated, "That conversation, the witness says, was prior to the conversation that this witness says she taped. However, she does not—she is not sure that the conversation she taped was after her second arrest. So I hope that clears up any misunderstanding."

The trial judge's clarification was not prejudicial to defendant. The trial judge did not express an opinion on or bolster Williams's testimony. After a review of the totality of the circumstances, the trial court did not err when it clarified Williams's testimony.

### B.  Food Lion Manager's Testimony

Defendant argues the trial court expressed an opinion on or bolstered the Food Lion manager's testimony. The Food Lion manager testified he could not determine whether defendant's proffered check was dated 27 August or 29 August and stated, "it looks like the loop didn't quite get fully rounded." The trial judge then asked, "But whatever the date that it looks like on the check, the check was passed or attempted to be passed on August 29th." The witness responded, "Yes, and that date is stamped on the back from the register." The trial judge did not express an opinion upon the testimony and merely clarified the manager's testimony regarding the date of the check.

The manager also testified that the woman pictured in the surveillance video had slightly darker hair than defendant had at trial. The trial judge stated, "[T]his person's hair seemed to be darker at the time, perhaps, in the video, but then he said things get darker over time. So I believe—was that your testimony? I don't mean to be testifying for you." The manager responded, "Right."

The trial court clarified the manager's testimony that the woman's hair in the video was slightly darker than defendant's hair color. The trial court did not express an opinion upon or bolster the manager's testimony. After review of the totality of the circumstances, the trial judge's clarification of the Food Lion manager's testimony and its question did not prejudice defendant.

### C.  Defendant's Confession

Defense counsel attempted to impeach a witness on whether defendant had written and signed her confession at 10:00 a.m. or 10:02 a.m. The trial court asked the witness, "Is there a big clock on the wall—" The trial judge questioned the witness to clarify that defendant's waiver of her rights was signed before her statement began. The trial court did not express an opinion upon or bolster the witness's testimony and did not prejudice defendant.

### D.  Trial Judge's Comments

Defendant argues the trial judge made several other comments throughout her trial that prejudiced her, including: (1) clarifying

whether a witness was involved in her bond-setting process; (2) clarifying that it would be customary for a detective to report whether defendant denied committing the offenses; (3) stating, "all right," after a detective's testimony; (4) correcting himself when he stated Williams's mother would help pay for an attorney instead of Williams's mother would help pay for a car; (5) asking about the tone of the recorded telephone conversation between defendant and Williams; and (6) stating, "I know," after defendant explained the Belk's merchandise was new and not worn.

Defendant has failed to show any of the trial judge's comments throughout the trial prejudiced her to award a new trial. Overwhelming evidence shows defendant: (1) took Sykes's purse out of her car; (2) altered Sykes's license; and (3) purchased and attempted to purchase merchandise using Sykes's altered driver's license and stolen checks. Defendant confessed she altered Sykes's license and used it and Sykes's checks to purchase merchandise. The trial court did not express an opinion upon or bolster any witnesses' testimony and did not prejudice defendant by clarifying witnesses' testimony. This assignment of error is overruled.

## V. Conclusion

The trial judge did not prejudice defendant when he asked questions and clarified witnesses' testimony. Defendant received a fair trial, free from prejudicial errors she preserved, assigned, and argued.

No Prejudicial Error.

Judges WYNN and CALABRIA concurs.