STATE OF NORTH CAROLINA v. ANTHONY LEON McNEIL

No. COA08-1169

(Filed 21 April 2009)

**1. Homicide— failure to provide special instructions—not guilty by reason of self-defense**

The trial court did not commit plain error in a first-degree murder case by failing to provide specific instructions on "not guilty by reason of self-defense" as a possible verdict because: (1) the jury instructions considered as a whole were correct, and the jury understood that the burden was upon the State to satisfy it beyond a reasonable doubt that defendant did not act in self-defense and the circumstances under which it should return a verdict of not guilty by reason of self-defense; and (2) the trial

STATE v. McNEIL

[196 N.C. App. 394 (2009)]

court made it clear to the jury that a verdict of not guilty by reason of self-defense was permissible.

## 2. Appeal and Error— preservation of issues—failure to make constitutional argument at trial—failure to assert plain error

Although defendant contends the trial court abused its discretion in a first-degree murder and possession of a firearm by a felon case by overruling defendant's objection to closing the courtroom to the public, this assignment of error is dismissed because: (1) defendant did not object to the trial court's closing of the courtroom on the constitutional bases he now argues on appeal, and defendant did not specifically and distinctly allege plain error as required by N.C. R. App. P. 10(c)(4); and (2) plain error review is only available in criminal appeals for challenges to jury instructions and evidentiary issues.

## 3. Firearms and Other Weapons— possession of firearm by felon—denial of request for special instructions—justification

The trial court did not err by denying defendant's written request for special jury instructions on the justification defense for the possession of a firearm by a felon charge because: (1) North Carolina courts have not recognized justification as a defense to a charge of possession of a firearm by a felon; (2) the evidence showed that defendant possessed the shotgun inside his home and away from the victim, at which time there was no imminent threat of death or serious bodily injury; and (3) without deciding the availability of the justification defense, the Court of Appeals held that the evidence in this case did not support giving a special instruction.

## 4. Homicide— denial of request for jury instruction—absence of duty to retreat

The trial court did not err in a first-degree murder case by denying defendant's request for a jury instruction regarding the absence of a duty to retreat because: (1) the evidence did not support a jury instruction on defendant's lack of duty to retreat; and (2) the evidence did not suggest defendant was free from fault in bringing on the difficulty with the victim, nor was defendant attacked in his own home or on his own premises.

5. **Criminal Law— trial court's alleged failure to maintain impartiality—expression of opinion—clarification of testimony—prevention of delay**

The trial court did not err in a first-degree murder and possession of a firearm by a felon case by allegedly failing to maintain its impartiality by becoming an active participant in the trial and expressing an opinion as to a factual issue for the jury, the weight of the evidence, credibility of certain witnesses, and defendant's guilt because the contested comments which were made in the presence of the jury were intended to clarify confusing or contradictory testimony or to prevent an unnecessary delay in the trial; and defendant failed to demonstrate that any of the trial court's comments intimated an opinion as to a factual issue, defendant's guilt, the weight of the evidence, or a witness's credibility.

Appeal by Defendant from judgments entered 22 May 2008 by Judge Clifton W. Everett, Jr. in Superior Court, Wilson County. Heard in the Court of Appeals 12 March 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Buren R. Shields, III, for the State.*

*Sue Genrich Berry for Defendant.*

STEPHENS, Judge.

On 22 May 2008, a jury found Anthony Leon McNeil ("Defendant") guilty of first degree murder and possession of a firearm by a felon. The trial court sentenced Defendant to life imprisonment without parole for the first degree murder conviction and a consecutive sentence of fifteen to eighteen months imprisonment for the possession of a firearm by a felon conviction.

## I. Facts

The State's evidence presented at trial tended to show the following: On 15 March 2007, William Frederick Barnes ("Barnes") rode his bicycle up to the passenger side window of Vashawn Tomlin's ("Tomlin") car at approximately 10:00 a.m. Tomlin testified that Barnes wanted to wash Tomlin's car. Approximately five minutes later, Tomlin saw Defendant walk out of Defendant's house by Tomlin's car and then walk into another house. Defendant walked out of the second house and spoke to Tomlin and Barnes. Barnes asked Defendant, "What's up[?]" to which Defendant replied, "You got a

nerve speaking to me, I ain't forgot what you did, I was going with her then." Barnes asked Tomlin what Defendant was talking about. Defendant tried to argue with Barnes, and "kept saying . . . 'I'll burn your ass[.]' " Defendant also told Barnes he would "put a hot one in him."

Tomlin testified that Defendant walked back into the first house and returned carrying a shotgun. Defendant walked from his porch toward Barnes, who was still sitting on a bicycle and leaning against the door of Tomlin's car, and Defendant shot Barnes with the shotgun. Tomlin testified Defendant walked back toward his house, then turned and walked into the street, stood over Barnes, aimed the shotgun at Barnes and fired. After shooting Barnes the second time, Defendant walked back to his house and stood in the doorway "looking crazy." Defendant then got into his vehicle and left the scene. Tomlin tried to comfort Barnes, and testified that he never saw any weapons on Barnes.

Dr. M.G.F. Gilliland ("Dr. Gilliland"), professor of pathology at the Brody School of Medicine at East Carolina University, testified for the State that Barnes had shotgun wounds to his pelvis and abdomen. Dr. Gilliland testified that the first wound to Barnes' pelvis appeared to have been inflicted by a shotgun fired approximately fifteen to twenty feet away, or possibly further. The second wound to Barnes' abdomen indicated the shotgun had been fired approximately five to fifteen feet away. The gun shots caused injuries to Barnes' internal organs, including the bowel, pancreas, and heart. The cause of Barnes' death was determined to be shotgun wounds of the torso.

Officer Arnold Samuel of the Wilson Police Department was the first officer to arrive at the scene, and he testified that he did not see any firearm in the vicinity of where Barnes was lying in the street. Adam Rech, an evidence and identification specialist with the Wilson Police Department, testified that he recovered a camouflage-patterned Mossberg shotgun from a house located a few houses away from Defendant's house. Michael Summers ("Summers"), an evidence identification specialist with the Wilson Police Department, testified that Adam Rech recovered a shotgun shell from the chamber of the 12-gauge Mossberg shotgun. Summers also identified two spent 12-gauge cartridge casings that were collected from the scene in the roadway.

At the conclusion of the State's evidence, Defendant presented evidence which tended to show the following: Mildred Woodard

STATE v. McNEIL

[196 N.C. App. 394 (2009)]

("Woodard"), Barnes' cousin, testified that on a prior occasion she had seen Barnes hit Defendant on the head for no reason. Woodard testified that Defendant did not retaliate and walked away. Woodard also testified that Barnes had a reputation in the community for being a bully. On cross-examination, Woodard testified that she had given a statement to a law enforcement officer on 17 March 2007 that she was going to say she had seen Barnes with a weapon, but that she did not because it was not true. Woodard also admitted that the officer stopped the statement after catching her in several lies. Woodard told the officer that Defendant's mother had instructed Woodard to tell the police that Woodard had seen Tomlin take a gun from Barnes' body. Woodard did not do as Defendant's mother instructed, and Woodard told the officer that she knew nothing about the details of Barnes' shooting.

Sergeant Kelly Lamm ("Lamm") with the Wilson Police Department testified that he interviewed Defendant on 15 March 2007. Lamm read Defendant's statement to the court:

I've known [Barnes] since around the year 2000. I really just knew him from the streets. Then I started going to Shamone Farmer who is now my wife, Shamone McNeil. After we started dating I found out that [Barnes] used to date Shamone's mother. I learned that [Barnes] had tried to rape Shamone when she was pregnant with my child. [Barnes] and I have had problems for years. [Barnes] is always bothering me and picking on me. [Barnes] worked at the club and I would go to the club and [Barnes] would always mess or pick on me. He would call me names and tell me he was going to get me . . . . Today I was at my house getting ready to cook some chicken outside. I saw [Barnes] ride by on a bike. He rode by and just had a smile on his face. He rode back by the house and asked me about my car. I told him the car was not for sale. Then I asked him why he was talking to me. I told him, ["]you don't like me and I don't like you so why don't you just leave.["] [Barnes] told me, ["]you don't want it["] and started— and was staring at me. [Barnes] said, ["]I will smoke your ass.["] [Barnes] then reached towards his back as if he had a gun. I started walking toward the house. I told him I didn't want any trouble. [Barnes] kept saying, ["]you don't want none, I will smoke your ass.["] I went inside and got the shotgun. It was a pump shotgun. We keep it loaded in the house. The shotgun is loaded with five or six shells. I took the shotgun and went back outside. I came down from the porch and into the street. [Barnes]

was still sitting on his bike in the street. I told him to go the hell on and leave me alone. [Barnes] kept his hand by his back as if he had a gun. [Barnes] kept saying, ["]I will smoke your ass.["] That's when I shot him. [Barnes] fell off his bike. As soon as I shot him I pumped another shell in the gun. I walked closer to [Barnes] and shot him again while he was on the ground. I turned around and went back inside my house. I told my wife to call the police. I took the shotgun and put it in my car. I drove to my grandmother's house. I put the gun in her house. I told [my] grandmother what happened. My grandmother called my Uncle Edward McNeil and Chris McNeil. They came over to her house. My uncles walked back to [sic] down to my house with me and that's when I turned myself into [sic] the police. I regret everything that has happened today[.]

Defendant testified at trial that Barnes had a reputation for violence in the community and that he was afraid of Barnes on the day he shot him. Defendant testified that on 15 March 2007, he believed Barnes had a weapon, and that Defendant saw Barnes reach behind his back like he was reaching for a weapon. Defendant had seen Barnes make that gesture on a prior occasion when Barnes put a gun in the back of his pants while at a car wash. Defendant testified that he shot Barnes upon seeing Barnes reach behind his back because Defendant was afraid. After he shot Barnes, Defendant heard something fall under Tomlin's car and he saw Barnes reaching under the car. Defendant shot Barnes a second time because he feared Barnes was reaching under the car for a weapon. Defendant never saw Barnes with a weapon, however.

Grover Crumel, Jr. ("Crumel") testified at trial that he lived in the home of a drug dealer around the corner from Defendant's house. Crumel heard a loud "pow" and a "boom" from inside the house, and ran outside to see what had caused the noise. Crumel saw Barnes lying in the street, and then saw Tomlin remove a pistol from Barnes' body before Tomlin ran inside his house.

Dr. Ezekiel Alston ("Alston"), a preacher near Defendant's house, testified that on 15 March 2007, he was ministering at another house in the neighborhood. While he was there, Barnes came into the house and made several comments that he was going to "mess [Defendant] up." Alston saw Barnes with a black gun. Alston testified that Barnes left the house and fired his gun as he rode down the street on a bicycle.

At the close of all the evidence, Defendant asked for a special jury instruction on the defense of justification for the charge of possession of a firearm by a felon. The trial court refused Defendant's request. The trial court charged the jury with the pattern instruction on self-defense, N.C.P.I. Crim. 206.10, as applied to first degree and second degree murder Although the trial court instructed the jury on the law relating to self-defense, it did not include "not guilty by reason of self-defense" as a possible verdict in its final mandate. Defendant did not object to the trial court's instructions on self-defense. In response to a jury request for re-instruction, the trial court repeated its final mandate. Defendant did not object.

The jury found Defendant guilty of first degree murder and possession of a firearm by a felon. From the trial court's judgments, Defendant appeals.

## II. Jury Instructions on Self-Defense

[1] Defendant argues the trial court committed plain error by failing to provide specific instructions on "not guilty by reason of self-defense" as a possible verdict. We disagree.

Our review of matters Defendant did not object to at trial is limited to plain error. N.C. R. App. P. 10(b)(1), (c)(4). Plain error is "error so fundamental that it tilted the scales and caused the jury to reach its verdict convicting the defendant." *State v. Bagley*, 321 N.C. 201, 211, 362 S.E.2d 244, 250 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988) (internal quotation marks omitted). "In deciding whether a defect in the jury instruction constitutes 'plain error', [sic] the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983). "[A] charge must be construed 'as a whole in the same connected way in which it was given.' When thus considered, 'if it fairly and correctly presents the law, it will afford no ground for reversing the judgment, even if an isolated expression should be found technically inaccurate.' " *State v. Tomblin*, 276 N.C. 273, 276, 171 S.E.2d 901, 903 (1970) (quoting *State v. Valley*, 187 N.C. 571, 572, 122 S.E. 373, 374 (1924)).

In *State v. Dooley*, 285 N.C. 158, 166, 203 S.E.2d 815, 820 (1974), our Supreme Court held that the trial court's failure to include an instruction on self-defense in its final mandate to the jury was reversible error entitling the defendant to a new trial. The Court based its holding on the following:

Although the [trial] court prior to the final mandate explained the law relating to self-defense, in his final instruction he omitted any reference to self-defense other than to say 'but [if] you are satisfied that the defendant killed [the victim] without malice, or that he killed him in the heat of a sudden passion, and that in doing so, that he used excessive force in the exercise of self-defense, it would be your duty to return a verdict of manslaughter.' Here in the final mandate the [trial] court gave special emphasis to the verdicts favorable to the State, including excessive use of force in self-defense as a possible verdict. At no time in this mandate did the [trial] court instruct the jury that if it was satisfied by the evidence that defendant acted in self-defense, then the killing would be excusable homicide and it would be their duty to return a verdict of not guilty.

The failure of the trial judge to include not guilty by reason of self-defense as a possible verdict in his final mandate to the jury was not cured by the discussion of the law of self-defense in the body of the charge. By failing to so charge, the jury could have assumed that a verdict of not guilty by reason of self-defense was not a permissible verdict in the case.

*Id.*

In our recent opinion in *State v. Tyson*, 195 N.C. App. ——, —— 672 S.E.2d 700, 708 (2009), we held that where the defendant was charged with statutory rape, "[t]he trial court's failure to include 'not guilty by reason of unconsciousness' in the final mandate to the jury constitute[d] plain error[.]" In *Tyson*, "the trial court correctly instructed that the jury should find [the defendant] 'not guilty' if it had a reasonable doubt as to any of the elements of statutory rape[.]" *Id.* However, "the trial court failed to include in its final mandate that the jury should find [the defendant] 'not guilty' if it had a reasonable doubt as to [the defendant's] consciousness." *Id.* In our holding, we noted that as was the case in *Dooley*, "even if the State proved all the statutory elements of statutory rape, [the defendant] would be not guilty if his actions were blameless due to his unconsciousness." *Id.* Also "as in *Dooley*, the omission of 'not guilty by reason of unconsciousness' was not cured by the discussion of the law of unconsciousness in the body of the charge." *Id.* Because of the trial court's omission, "the jury could have assumed that a verdict of not guilty of statutory rape by reason of unconsciousness was not a permissible verdict in the case." *Id.*

The present case is distinguishable from *Dooley* and *Tyson*, however. Here, the trial court's instruction to the jury as to murder and manslaughter included the following:

> For you to find the Defendant guilty of first degree murder, the State must prove six things, six, beyond a reasonable doubt. . . . And the sixth and last element, that the Defendant did not act in self-defense or that the Defendant was the aggressor in bringing on the fight with the intent to kill or inflict serious bodily harm upon the deceased.

> Now, second degree murder differs from first degree murder in that neither specific intent to kill, premeditation nor deliberation is a necessary element. For you to find the Defendant guilty of second degree murder, the State must prove beyond a reasonable doubt that the Defendant unlawfully, intentionally and with malice wounded the victim thereby proximately causing his death and that the Defendant did not act in self-defense. Or if the Defendant did act in self-defense that he was the aggressor with the intent to kill or inflict serious bodily harm in bringing on the fight.

> Voluntary manslaughter is the unlawful killing of a human being without malice and without pre-meditation and without deliberation. A killing is not committed with malice if the Defendant acts . . . in the heat of passion upon adequate provocation.

> . . . .

> Voluntary manslaughter is also committed if the Defendant kills in self-defense but uses excessive force under the circumstances or was the aggressor without murderous intent in bringing on the fight in which the killing took place.

> The burden is on the State to prove beyond a reasonable doubt that the Defendant did not act in self-defense. However, if the State proves beyond a reasonable doubt that the Defendant, though otherwise acting in self-defense, used excessive force or was the aggressor though he had no murderous intent when he entered the fight, the Defendant would be guilty of voluntary manslaughter.

In its final mandate, the trial court instructed:

> Now, ladies and gentlemen of the jury, if you find from the evidence beyond a reasonable doubt that on or about the alleged

date, that is, March the 15th last year, 2007, the Defendant, Mr. McNeil, intentionally *but not in self-defense* killed the victim, Mr. Barnes, thereby proximately causing the victim's death and that the Defendant acted with malice, with premeditation and with deliberation, it would be your duty to return a verdict of guilty of first degree murder. If you do not so find or have a reasonable doubt as to one or more of these things, you will not return a verdict of first degree murder.

If you do not find the Defendant guilty of first degree murder, you must determine whether he is guilty of second degree murder. If you find from the evidence beyond a reasonable doubt that on or about the alleged date, March 15th, 2007, the Defendant, Mr. McNeil, intentionally and with malice *but not in self-defense* wounded the victim, Mr. Barnes, thereby proximately causing Mr. Barnes' death, it would be your duty to return a verdict of guilty of second degree murder. If you do not so find or . . . have a reasonable doubt as to one or more of these things, you will not return a verdict of second degree murder.

If you do not find the Defendant guilty of second degree murder, you must consider whether he's guilty of voluntary manslaughter. If you find from the evidence beyond a reasonable doubt that on or about the alleged date, March 15, 2007, the Defendant, Mr. McNeil, intentionally wounded the victim, Mr. Barnes, and thereby proximately caused Mr. Barnes' death and that the Defendant, Mr. McNeil was the aggressor in bringing on the fight or use of excessive force, it would be your duty to return a verdict of guilty of voluntary manslaughter *even if the State has failed to prove that the Defendant did not act in self-defense.*

Or if you find from the evidence beyond a reasonable doubt that on or about the alleged date, March 15th, 2007, the Defendant, Mr. McNeil, intentionally *and not in self-defense* wounded the victim, Mr. Barnes, and thereby proximately caused the victim's death but the State has failed to satisfy you beyond a reasonable doubt that the Defendant did not act in the heat of passion upon adequate provocation, it would be your duty to return a verdict of guilty of voluntary manslaughter.

If you do not so find or have a reasonable doubt as to one or more of these things, ladies and gentlemen, then you would return a verdict of not guilty.

(Emphasis added).

Although the trial court did not include "not guilty by reason of self-defense" as a possible verdict in its final mandate, the jury instructions considered as a whole were correct. "Many decisions of this Court hold that 'a charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct.' " *State v. Jones*, 294 N.C. 642, 653, 243 S.E.2d 118, 125 (1978) (quoting *State v. Gaines*, 283 N.C. 33, 43, 194 S.E.2d 839, 846 (1973)). Here, when the trial court's instructions to the jury are considered as a whole, "[w]e think the jury clearly understood that the burden was upon the State to satisfy it beyond a reasonable doubt that [D]efendant did not act in self-defense and clearly understood the circumstances under which it should return a verdict of not guilty by reason of self-defense." *Id.* Unlike in *Dooley* and *Tyson*, the trial court made it clear to the jury that a verdict of not guilty by reason of self-defense was permissible, and under what circumstances the jury should return such a verdict. This assignment of error is overruled.

### III. Closing the Courtroom to the Public

[2] In his second assignment of error, Defendant argues the trial court erred as a matter of law, or in the alternative, abused its discretion, by overruling Defendant's objection to closing the courtroom to the public in violation of the United States and North Carolina Constitutions. We disagree.

At trial, Judge Everett closed the courtroom during Tomlin's testimony because Tomlin was concerned that his and his family's safety would be jeopardized if Tomlin's testimony was heard by the public. Defendant objected to closing the courtroom on the bases that "the public has a right to hear all the evidence" and that defense counsel may not be able to reference Tomlin's testimony during closing arguments unless the courtroom was also closed to the public during closing arguments. Defendant did not object to the trial court's closing of the courtroom on the constitutional bases which he now argues on appeal, however. A question that is "not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action" may be considered on appeal as plain error. N.C. R. App. P. 10(c)(4). However, "because [D]efendant did not 'specifically and distinctly' allege plain error as required by North Carolina Rule of Appellate Procedure 10(c)(4), [D]efendant is not entitled to plain error review of this issue." *State v. Dennison*, 359 N.C. 312, 312-13, 608 S.E.2d 756, 757 (per curiam), *disc. rev. denied*, 360 N.C. 69, 622 S.E.2d 113 (2005) (citing N.C. R. App. P. 10(c)(4)). Additionally, "plain error review is [only] available in criminal appeals for challenges to

jury instructions and evidentiary issues." *Dogwood Development and Management Co., LLC v. White Oak Transport Co., Inc.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008) (internal citations omitted). This assignment of error is dismissed.

### IV. Jury Instructions on Justification Defense

**[3]** Defendant's third assignment of error asserts the trial court erred by denying Defendant's written request for special jury instructions on the justification defense in the possession of a firearm by a felon charge.

> In North Carolina, requests for special jury instructions are allowable under N.C.G.S. §§ 1-181 and 1A-1, Rule 51(b) of the North Carolina General Statutes. N.C. Gen. Stat. §§ 1-181, 1A-1, Rule 51(b) (2003). It is well settled that the trial court must give the instructions requested, at least in substance, if they are proper and supported by the evidence. *See Roberts v. Young*, 120 N.C. App. 720, 726, 464 S.E.2d 78, 83 (1995). "The proffered instruction must . . . contain a correct legal request and be pertinent to the evidence and the issues of the case." *State v. Scales*, 28 N.C. App. 509, 513, 221 S.E.2d 898, 901 (1976). "However, the trial court may exercise discretion to refuse instructions based on erroneous statements of the law." *Roberts*, 120 N.C. App. at 726, 464 S.E.2d at 83 (citation omitted).

*State v. Craig*, 167 N.C. App. 793, 795, 606 S.E.2d 387, 388 (2005).

At trial, Defendant requested a special jury instruction on the defense of justification for the charge of possession of a firearm by a felon, which the trial court denied. "[T]he courts of this State have not recognized justification as a defense to a charge of possession of a firearm by a felon." *State v. Napier*, 149 N.C. App. 462, 464, 560 S.E.2d 867, 869 (2002). However, Defendant asks us to adopt the test set out by the Eleventh Circuit in *U.S. v. Deleveaux*, 205 F.3d 1292 (11th Cir.), *cert. denied*, 530 U.S. 1264, 147 L. Ed. 2d 988 (2000), for determining the applicability of the justification defense to possession of a firearm by a felon. The *Deleveaux* court set out four elements a defendant must show to establish this defense:

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury;

> (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct;

(3) that the defendant had no reasonable legal alternative to violating the law; and

(4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Id.* at 1297. The *Deleveaux* court noted, however, that this defense is only available under federal law in "extraordinary circumstances." *Id.*

Our Court declined to recognize justification as a defense to possession of a firearm by a felon in *State v. Craig*, 167 N.C. App. 793, 795-96, 606 S.E.2d 387, 388-89 (2005). In *Craig*, the defendant was involved in an altercation at an auto garage where he fired a pistol. *Id.* at 794, 606 S.E.2d at 388. After the altercation, the defendant carried the pistol to a friend's house, where he "was not under any imminent threat of harm." *Id.* at 796-97, 606 S.E.2d at 389 (citation omitted). We held that "the evidence did not support giving a special instruction on justification because there was a time period where [the defendant] was under no imminent threat while possessing the gun." *Id.*

We also declined to recognize the justification defense in *Napier*, 149 N.C. App. at 465, 560 S.E.2d at 869. In *Napier*, the defendant was involved in an on-going feud with his neighbor and his neighbor's son. *Id.* at 462, 560 S.E.2d at 868. The defendant's neighbor had fired a shotgun in the air above defendant's property over the course of a few days beforehand, when the defendant walked across the street with a holstered nine millimeter handgun attached to his hip. *Id.* at 462-63, 560 S.E.2d at 868. The defendant was convicted of possession of a firearm by a felon, and on appeal argued the trial court abused its discretion in denying his request for a special jury instruction on the justification defense. *Id.* at 463, 560 S.E.2d at 868. Although this Court did not decide whether the defense of justification would be recognized in North Carolina, we held that it did not apply where the defendant while armed, voluntarily walked onto his neighbor's property, asked his neighbor and his neighbor's son if they wanted him to take the gun home, and then remained on the premises for several hours. *Id.* at 465, 560 S.E.2d at 869.

As in *Craig* and *Napier*, the evidence in the present case shows that Defendant possessed the shotgun inside his home and away from Barnes, at which time there was no imminent threat of death or serious bodily injury. *See Deleveaux*, 205 F.3d at 1297. Without deciding the availability of the justification defense in possession of a firearm

by a felon cases in North Carolina, we hold that the evidence in this case did not support giving a special instruction on justification.

## V. *Jury Instructions on Absence of Duty to Retreat*

[4] Defendant also asserts the trial court erred by denying Defendant's request for a jury instruction regarding the absence of a duty to retreat. We disagree.

"It is well settled that the trial court must give the instructions requested, at least in substance, if they are proper and supported by the evidence." *Napier*, 149 N.C. App. at 463-64, 560 S.E.2d at 868. Our Courts have described the common law right of an individual to defend himself from death or bodily harm on his premises as:

> Ordinarily, when a person who is free from fault in bringing on a difficulty [] is attacked in his own home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self[-]defense, regardless of the character of the assault, but is entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm.

*State v. Blue*, 356 N.C. 79, 86, 565 S.E.2d 133, 138 (2002) (internal quotation marks and citation omitted).

The evidence in the present case does not support a jury instruction on Defendant's lack of a duty to retreat. The evidence does not suggest Defendant was "free from fault in bringing on [the] difficulty" with Barnes, nor was he "attacked in his own home or on his own premises[.]" *Id.* The trial court did not err in denying Defendant's request for a jury instruction on the absence of a duty to retreat.

## VI. *Trial Court's Expression of Opinion*

[5] Lastly, Defendant argues the trial court failed to maintain its impartiality by becoming an active participant in the trial and expressing an opinion as to a factual issue for the jury, the weight of the evidence, credibility of certain witnesses, and Defendant's guilt. We disagree.

> It is well established by our case law and statutory enactments that it is improper for a trial judge to express in the presence of the jury his opinion upon any issue to be decided by the jury or to indicate in any manner his opinion as to the weight of the evidence or the credibility of any evidence properly before the jury.

*See* N.C. Gen. Stat. § 15A-1222 (1983); *State v. Harris*, 308 N.C. 159, 301 S.E.2d 91 (1983). Even so, every such impropriety by the trial judge does not result in prejudicial error. Whether the judge's comments, questions or actions constitute reversible error is a question to be considered in light of the factors and circumstances disclosed by the record, the burden of showing prejudice being upon the defendant. *State v. Brady*, 299 N.C. 547, 264 S.E.2d 66 (1980); *State v. Greene*, [285] N.C. 482, 206 S.E.2d 229 (1974). Thus, in a criminal case it is only when the jury may reasonably infer from the evidence before it that the trial judge's action intimated an opinion as to a factual issue, the defendant's guilt, the weight of the evidence or a witness's credibility that prejudicial error results. *State v. Yellorday*, 297 N.C. 574, 256 S.E.2d 205 (1979). In this connection it is well settled that it is the duty of the trial judge to supervise and control the course of a trial so as to insure justice to all parties. In so doing the court may question a witness in order to clarify confusing or contradictory testimony. *State v. Greene*, 285 N.C. 482, 206 S.E.2d 229.

*State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985).

Defendant identifies several remarks from the trial court in support of his argument which he contends denied him a fair trial. First, Defendant submits the following from the trial court's interruption during defense counsel's cross-examination of Dr. Gilliland:

[DEFENSE COUNSEL:] So when you say several seconds, are you saying two, three, four, five or is it just determinative on [Barnes] himself?

THE COURT: Several means more than two; doesn't it? More than one.

THE WITNESS: Yes, it's more than one.

. . . .

[DEFENSE COUNSEL:] Having viewed those x-rays and realizing that the projectiles travelled [sic] that far up into the body, is it reasonable to say that he was a fairly good distance away from him within the parameters that you described, five to fifteen feet?

THE COURT: You're talking for the abdominal wound?

THE WITNESS: Yes, that was my understanding of the question.

[DEFENSE COUNSEL]: Yes, that's correct.

THE COURT: Are you asking her was he five to fifteen feet away when that wound was inflicted?

. . . .

[DEFENSE COUNSEL:] Now realizing that that automobile may or may not be in the exact same position it was that particular day, will that photograph aid you in explaining where the projectiles—

THE COURT: Did she say there was an automobile there that day? Has anybody said there was an automobile there that day?

[DEFENSE COUNSEL]: Not yet, Judge.

THE COURT: Oh, okay. Well, ask your question again. She's already said the photograph was made at some later time. Didn't you?

[DEFENSE COUNSEL]: Yes, Judge.

Defendant also identified the following exchanges between Defense Counsel and the trial court in support of his argument. These communications occurred outside the presence of the jury.

THE COURT: The jury is going to hear [closing arguments].

[DEFENSE COUNSEL]: I understand and I just want to make sure in closing arguments I will not be prohibited from using that material if need be.

THE COURT: If it's germane. I don't know how it's germane to this but you can manufacture something I presume.

. . . .

[DEFENSE COUNSEL]: The last two [jury instructions] I address is [sic] 308.60, self-defense of family member or other, and 308.80, defense of habitation.

[THE STATE]: Judge, I object to—

THE COURT: No, I'm just going to give self-defense.

[DEFENSE COUNSEL]: And, again, I renew my exception to those under 5th, 6th, 8th and 14th Amendment[s] of the United States Constitution.

THE COURT: You want to continually compound this case, I'm not going to let you do it. Go ahead. Note your objection. We want to keep this case clean. We don't want anybody—I sure don't

want another judge to have to listen to this mess again. What horror that would be.

All right. Anything else?

[DEFENSE COUNSEL]: Nothing else, Judge.

THE COURT: Drug it out until the inth [sic] degree, I can't believe it. Here it is five minutes to 5:00 on Wednesday and we've taken a little simple case and gone into Thursday. Okay. See you all in the morning.

Defendant argues the above remarks, *inter alia*,[1] by the trial court demonstrated a negative attitude toward Defendant and an exasperation with the length of the trial. Defendant contends the trial court's statements influenced the jury's decision and caused the jury to deliberate for only fifty minutes before finding Defendant guilty of first degree murder and possession of a firearm by a felon. "Jurors respect the judge and are easily influenced by suggestions, whether intentional or otherwise, emanating from the bench." *State v. Holden*, 280 N.C. 426, 429, 185 S.E.2d 889, 892 (1972). Defendant also argues the trial court's remarks constituted an improper opinion upon factual issues in violation of N.C. Gen. Stat. § 15A-1222 which provides "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury."

The fact that a trial court asks questions or clarifies a witness' testimony, however, does not amount to error *per se*.

[I]t does not necessarily follow that every ill-advised comment by the trial judge which may tend to impeach the witness is so harmful as to constitute reversible error. The comment should be considered in light of all the facts and attendant circumstances disclosed by the record, "and unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless."

*State v. Brady*, 299 N.C. 547, 560, 264 S.E.2d 66, 73-74 (1980) (quoting *State v. Perry*, 231 N.C. 467, 471, 57 S.E.2d 774, 777 (1950)); *see State*

---

1. Defendant identified several other exchanges between Defense Counsel and the trial court in support of his contention that the trial court failed to maintain its impartiality. We have not included these other communications, however, because the portions of the transcript we have included are representative of Defendant's argument and any further excerpts would be superfluous.

*v. Artis,* 91 N.C. App. 604, 608, 372 S.E.2d 905, 908 (1988) (holding that trial court's remark that it had "entertained a lot of irrelevant evidence that nobody objected to[,]" was not prejudicial as it was clearly "directed at the State's repetitious and irrelevant questions rather than at defendant's evidence or witnesses.").

In *State v. Rushdan,* 183 N.C. App. 281, 285, 644 S.E.2d 568, 572, *disc. review denied,* 361 N.C. 574, 651 S.E.2d 557 (2007), we held the defendant failed to show she was prejudiced by the trial court's comments throughout a trial for obtaining property by false pretense and related offenses. The trial court's comments included:

(1) clarifying whether a witness was involved in her bond-setting process; (2) clarifying that it would be customary for a detective to report whether defendant denied committing the offenses; (3) stating, "all right," after a detective's testimony; (4) correcting himself when he stated [the defendant's friend's] mother would help pay for an attorney instead of [defendant's friend's] mother would help pay for a car; (5) asking about the tone of the recorded telephone conversation between defendant and [her friend]; and (6) stating, "I know," after defendant explained the Belk's merchandise was new and not worn.

*Id.* at 285-86, 644 S.E.2d at 572. In light of the overwhelming evidence in support of the defendant's guilt, we held the trial court's comments did not result in sufficient prejudice to warrant a new trial. *Id.* at 286, 644 S.E.2d at 572-73.

In the present case, of the comments identified by Defendant which he argues prejudiced the jury, some were made outside the presence of the jury, and thus, could not have possibly conveyed any impression to the jury. The contested comments which were made in the presence of the jury were clearly intended to clarify confusing or contradictory testimony or to prevent an unnecessary delay in the trial. Defendant has failed to demonstrate that any of the trial court's comments "intimated an opinion as to a factual issue, the [D]efendant's guilt, the weight of the evidence or a witness's credibility that prejudicial error results." *State v. Blackstock,* 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985).

NO ERROR.

Judges JACKSON and STROUD concur.