STROUD, Judge,
dissenting.
Because I believe that the evidence would permit a jury to find that defendant was justified in possessing the firearm under the Deleveaux test, I dissent, and I would reverse defendant’s conviction for possession of a firearm by a felon and remand for a new trial on these charges.
The majority opinion summarizes the evidence presented at trial quite well, but draws a different conclusion from it than I would; a properly instructed jury may also. First, I would hold that the Deleveaux test does apply in North Carolina. Our cases have relied upon it several times, although only assuming arguendo that it would apply because the facts in those cases did not satisfy the test. The test is entirely consistent with North Carolina’s common law defenses of justification and necessity and provides useful guidance to the trial courts for instructing juries. In the cases discussed by the majority opinion, different factual situations were presented and, in those cases, the jury instruction was not supported by the evidence under the Deleveaux test. The factual situation here is different and presents a question of fact that I believe a jury should have the opportunity to resolve.
In Napier, the defendant possessed a gun when he went to the victim’s property, where he stayed several hours and only then shot the *572 victim. State v. Napier, 149 N.C. App. 462, 463, 560 S.E.2d 867, 868 (2002). Thus, the defendant possessed the gun well before he was potentially under any sort of threat which would justify possession of the gun. In addition, the jury’s assessment of the facts in Napier was quite different than in this case. The Napier defendant was charged with
(1) discharging a firearm into occupied property, (2) assault with a deadly weapon with intent to kill inflicting serious injury, (3) conspiracy to discharge a firearm into occupied property, (4) conspiracy to commit an assault with a deadly weapon, (5) possession of a firearm by a felon on 4 July 1999, and (6) possession of a firearm by a felon on 3 July 1999.

Id.

The jury deadlocked and a mistrial was declared on the first two charges. Id. The jury found defendant not guilty of conspiracy and possession on 4 July and found defendant guilty only of the charge of possession on 3 July. Id. This Court noted that the evidence did not support defendant’s claim of justification due to the lapse of time between when defendant went to the victim’s property while carrying a gun and the shooting: “[Defendant asked Robert Ford and Brad Ford if they wanted him to take the gun home; and defendant, while armed, stayed on Robert Ford’s premises for several hours talking to Robert Ford before the fight ensued.” Id. at 465, 560 S.E.2d at 869. Under these circumstances, defendant was not entitled to an instruction on justification. Id.
In Craig, the defendant was charged with assault with a deadly weapon inflicting serious injury and possession of a firearm by a felon. State v. Craig, 167 N.C. App. 793, 795, 606 S.E.2d 387, 388 (2005). An instruction as to self-defense was given, but the trial court did not give the requested instruction as to justification for possession of the gun.[1] Id. at 794, 606 S.E.2d at 388. The jury found defendant guilty of both charges. Id. at 795, 606 S.E.2d at 388. On appeal, failure to give an instruction as to justification for possession of the firearm was the only issue raised by defendant. Id. The Court noted that the
uncontroverted evidence in this case shows that after leaving the altercation, Defendant kept the gun and took it with him to a friend’s house on Dana Road. He continued to hold it and carry it while speaking with Hamilton. At *573 that time, Defendant was not under any imminent threat of harm. Thus, the evidence did not support giving a special instruction on justification because there was a time period where Defendant was under no imminent threat while possessing the gun.
Id. at 796-97, 606 S.E.2d at 389 (citation omitted).
In Boston, the defendant was charged with and convicted of second-degree trespassing and possession of a firearm by a felon. State v. Boston, 165 N.C. App. 214, 215, 598 S.E.2d 163, 164 (2004). The evidence showed that the
defendant and Daniels were engaged in an on-going conflict whereby in the week prior to the shooting, Daniels threatened to kill defendant, and on at least one prior occasion Daniels fired a gun at defendant. However, the evidence also tends to show that on the day of the shooting, defendant was observed walking through the apartment complex carrying a pistol. The State’s evidence also tended to show that defendant chased Daniels around a parked car with the gun in hand. Therefore, we hold that, as in Napier, there is no evidence to support the conclusion that defendant was under an imminent threat of death or injury when he made the decision to carry the gun. Accordingly, the trial court did not err in failing to instruct the jury on justification as an affirmative defense.
Id. at 222, 598 S.E.2d at 167-68. Again, regardless of whether defendant may have been justified in possessing the gun at the moment of the shooting, the evidence showed that defendant possessed the gun at a time entirely separate from the altercation — when he was “walking through the apartment complex carrying a pistol.” Id. at 222, 598 S.E.2d at 167.
In McNeil, the defendant was charged with and found guilty of “first degree murder and possession of a firearm by a felon.” State v. McNeil, 196 N.C. App. 394, 396, 674 S.E.2d 813, 815 (2009). As in this case, defendant did request and the trial court gave an instruction on self-defense. Id. at 400, 674 S.E.2d at 817. Unlike the present case, the jury found defendant guilty on all charges and rejected defendant’s claims of self-defense. Id. The evidence as to the defendant’s possession of the firearm in McNeil was as follows:
On 15 March 2007, William Frederick Barnes (“Barnes”) rode his bicycle up to the passenger side window of *574 Vashawn Tomlin’s (“Tomlin”) car at approximately 10:00 a.m. Tomlin testified that Bames wanted to wash Tomlin’s car. Approximately five minutes later, Tomlin saw Defendant walk out of Defendant’s house by Tomlin’s car and then walk into another house. Defendant walked out of the second house and spoke to Tomlin and Bames. Bames asked Defendant, “What’s up[?]” to which Defendant replied, “You got a nerve speaking to me, I ain’t forgot what you did, I was going with her then.” Bames asked Tomlin what Defendant was talking about. Defendant tried to argue with Bames, and “ kept saying ... ‘I’ll bum your ass[.]’ ” Defendant also told Bames he would “put a hot one in him.”
Tomlin testified that Defendant walked back into the first house and returned carrying a shotgun. Defendant walked from his porch toward Bames, who was still sitting on a bicycle and leaning against the door of Tomlin’s car, and Defendant shot Bames with the shotgun. Tomlin testified Defendant walked back toward his house, then turned and walked into the street, stood over Bames, aimed the shotgun at Bames and fired. After shooting Bames the second time, Defendant walked back to his house and stood in the doorway “looking crazy.”
Id. at 396-97, 674 S.E.2d at 815-16.
As to the defendant’s request for an instruction on justification, the McNeil court stated that
As in Craig and Napier, the evidence in the present case shows that Defendant possessed the shotgun inside his home and away from Bames, at which time there was no imminent threat of death or serious bodily injury. Without deciding the availability of the justification defense in possession of a firearm by a felon cases in North Carolina, we hold that the evidence in this case did not support giving a special instruction on justification.
Id. at 406-07, 674 S.E.2d at 821 (citation omitted).
Overall, these cases support, rather than defeat, defendant’s argument that the jury should have been instructed on justification. The most significant difference between this case and all of those above is that in those cases, there was an obvious time period when the defendant *575 possessed a gun but was not under any imminent threat of death or great bodily harm. Even if the those defendants may have been justified in possessing a gun at the exact moment of the altercation — which the juries all found they were not, by rejecting the self-defense theory — they would still be guilty of possessing the gun at a time completely separate from the altercation with the victim.
Here, by contrast, the evidence, taken in the light most favorable to defendant, showed that the entire time that defendant possessed the gun Mr. Davis was standing outside of the house with a gun, posing an imminent threat. One witness testified that Mr. Davis said he was “going to stay out here until the door come open.” Therefore, there was evidence from which a jury could reasonably conclude that defendant’s possession of the firearm was justified for the entire time he possessed it.
Moreover, unlike in the prior cases, the jury acquitted the defendant of all homicide charges based upon self-defense. Defendant was charged with first degree murder, but the jury was presented with issues as to first degree murder, second degree murder, and voluntary manslaughter and found defendant not guilty of all of these. I disagree with the majority’s statement that “the record does not indicate why the jury acquitted Defendant of first-degree murder — whether on the basis of self-defense or that the jury found that the State failed to carry its burden to prove beyond a reasonable doubt that Defendant murdered Davis.”
To the contrary, it is not disputed that defendant shot Davis, and the jury acquitted defendant of first degree murder as well as all lesser-included offenses. The only logical inference we can draw from the jury’s verdict is that the jury relied upon defendant’s claim of perfect self-defense. In none of the cases discussed above did the jury believe the defendants’ claims of self-defense, where that issue was presented. It is true that the facts presented might have permitted a jury to reject a claim of self-defense, and that a jury might have found that defendant could have used some other means to protect himself or to avoid a confrontation with Davis, but the jury has already considered that evidence and found in favor of defendant. This means that the jury found that:
(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
(2) defendant’s belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
*576 (3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.
State v. Lyons, 340 N.C. 646, 661, 459 S.E.2d 770, 778 (1995) (citation and quotation marks omitted).
Given the jury’s determination as to self-defense as to the shooting here, it is entirely possible, and indeed probable, that the jury would have also found, if properly instructed, that the four elements of the justification defense were established:
(1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.
United States v. Deleveaux, 205 F.3d 1292, 1297, cert. denied, 530 U.S. 1264, 147 L.Ed. 2d 988 (2000).
The elements of perfect self-defense and justification are slightly different, but not much, particularly under the facts as presented in this case. The gun defendant used was not his own; he got it from Gordon just prior to the shooting — not hours or days before, but minutes — while Davis was just outside the house, threatening defendant. The issue of the timing of defendant’s possession of the gun is crucial. It is possible that a jury could find that he possessed it longer than necessary for his own protection, but the facts certainly present a jury question in that regard, and that is sufficient for defendant to be entitled to the instruction.[2]
*577 This case presents one of those “most extraordinary circumstances” where the justification defense is applicable. It is odd that a man could be acquitted for all forms of homicide based on the theory that he had a clear right of self-defense, but he would be convicted for using the gun that the jury found to be necessary under the circumstances to protect himself from “death or great bodily harm.” Lyons, 340 N.C. at 661, 459 S.E.2d at 778. This is not one of those cases where the jury already evaluated any claims of self-defense and rejected them, as all of the prior cases from this court cited by the majority were. Indeed, it is difficult to imagine a situation in which a defendant would be entitled to an instruction on justification for possession of a firearm if defendant here was not. I would therefore specifically adopt the justification defense as laid out in Deleveaux, reverse defendant’s convictions for possession of a firearm by a felon and habitual felon, and remand for a new trial on these matters. Therefore, I respectfully dissent.

. Although not clear from the opinion, the record from Craig shows that a self-defense instruction was given.

. See State v. Bush, 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982) (“A defendant is entitled to an instruction on self-defense if there is any evidence in the record from which it can be determined that it was necessary or reasonably appeared to be necessary for him to kill his adversary in order to protect himself from death or great bodily harm.”).